## RUSSELL CO., Inc. v. McCOMB.
### No. 13125.

United States Court of Appeals
Fifth Circuit.

March 9, 1951.

Fred J. Lotterhos, Jackson, Miss., for appellant.

William S. Tyson, Solicitor, Bessie Margolin, Asst. Solicitor, and Kay Kimmell, Atty., U. S. Dept. of Labor, all of Washington, D. C., and Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, Birmingham, Ala., for appellee."

Before HUTCHESON, Chief Judge, and McCORD and RUSSELL, Circuit Judges.

McCORD, Circuit Judge.

This suit was brought by the Administrator of the Wage and Hour Division of the United States Department of Labor [1] to restrain certain alleged violations of the Fair Labor Standards Act of 1938. Title 29 U.S.C.A. § 201.

The question here presented is whether a night watchman employed by appellant was "engaged in commerce" or in the "production of goods for commerce" in

1. After this appeal was filed, the Secretary of Labor succeeded to the Administrator's right to bring legal proceedings under the Act. Title 5 U.S.C.A. § 22.

such manner as to be covered by the Fair Labor Standards Act.

The material facts, briefly stated, reveal that appellant operates a wholesale grocery business at Jackson, Mississippi, where it maintains a warehouse and its principal business office. Appellant purchases and sells merchandise, and packs rice, and roasts coffee for sale to both wholesale and retail outlets principally in the state of Mississippi. Approximately 85 to 90 per cent of the merchandise handled by appellant is received from outside the state. During the period from July 1st, 1947 to May 31, 1948, appellant carried on a $5,484,724.21 volume of business. Most of its sales were made in Mississippi, but approximately $224,272.62 worth of merchandise was shipped to an affiliate in Louisiana. The value of out-of-state shipments to the Louisiana affiliate by means of freight cars stopped over at Jackson, Mississippi was $50,073.73.

The total amount of coffee roasted, ground and packaged by appellant during the period in question was $25,971.41, of which amount only $378.42 worth was shipped to Louisiana. The value of the rice packaged at Jackson during the same period was $12,704.04, and of this total the value of the portion shipped to the Louisiana affiliate was $2,609.94. Thus the total shipments of coffee and rice to Louisiana amounted to approximately 7.7 per cent of the total amount of coffee and rice processed at Jackson, Mississippi, during the period in dispute.

The night watchman in question is employed to guard appellant's premises, including the warehouse building, offices, the area inside in which the coffee and rice are packaged for distribution, the yard in which the freight motor trucks are parked, and all merchandise loaded in the railroad freight cars standing on the spur tracks on appellant's property. His duty is to guard against fire, theft, or any other damage to any of the buildings or merchandise. In connection with such duties, the watchman is required to patrol the premises constantly during the night, and punch time clocks at designated places and hourly intervals. Two of the four time-clock stations located on appellant's premises are situated on a 570-foot loading platform, which runs the entire length of one side of the warehouse building and overlooks the two railroad spur tracks.[2] From these time-clock stations and the receiving clerk's office, the night watchman is able to observe and protect the merchandise located in the freight cars on the spur tracks, which customarily remain on appellant's premises overnight and over weekends. The night watchman is required to notify appellant immediately if he observes any fire or trespassing or other damage to the company property, and by means of his employment the company is able to save approximately $100 per year on insurance premiums.

In addition to his duties of guarding appellant's property, the night watchman is required to unlock the yard gate for motor freight trucks which arrive during the night. However, the interstate deliveries by truck are usually made during the day, although the truck usually remains on company premises and under the watchman's care during the night. The watchman is on duty from 6 p. m. until daylight the next morning.

Appellant admits that it is engaged in interstate commerce, and contends that it has fully complied with the statute with respect to all of its employees covered by the Act. It denys that the night watchman is "engaged in commerce" within the purview of the statute, and insofar as the "production of goods for commerce" is

2. In this connection, the district court found significant "the fact that two of the four 'stations' where defendant's night watchman is required to check in regularly each hour he is on duty are located on the platform along side of which the railroad freight cars are placed for unloading and where there is the greatest possible danger of theft, and also the fact that in defendant's vast expanse of buildings the only place the night watchman is permitted to enter is the Receiving Clerk's office, on the railroad tract platform, across which millions of dollars worth of goods move in interstate commerce each year—from railroad freight cars into defendant's warehouse."

concerned, appellant asserts that the relationship of the night watchman's duties to the production of coffee and rice shipped in interstate commerce was so remote that it could not bring him within the coverage of the Act.

We are of opinion the trial court correctly held that appellant's night watchman is engaged in commerce and in the production of goods for commerce in such degree as to come within the scope of the Fair Labor Standards Act. The holding that the watchman's activities "contribute so materially and directly to the flow of goods in commerce 'as to be in practice and in legal contemplation a part of it' " is in accord with the prevailing authorities. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Cf. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; See also, Fitzgerald Const. Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786; Walling v. Sondock, 5 Cir., 132 F.2d 77; Cf. Spaeth v. Washington University, Mo.App., 213 S.W.2d 276.

In the case of Walling v. Sondock, 5 Cir., 132 F.2d 77, 78, this court, in holding that night watchmen who guarded and protected interstate distribution transactions were "engaged in commerce," stated the applicable rule thus: " * * * if the work of the employee has such close and immediate connection with the process of production for commerce as to be an essential part of it, such employee is engaged in the production of goods for commerce within the meaning of the Act. Similarly, if an employee's services are part of and contribute materially to the consummation of transactions in interstate commerce, the employee is engaged in commerce as defined by the Act." See also, Slover v. Wathen, 4 Cir., 140 F.2d 258; Engebretsen v. E. J. Albrecht Co., 7 Cir., 150 F.2d 602.

Here, it is without dispute that the night watchman guards appellant's entire premises and property, including the loading platform, the interstate shipments loaded in the freight cars and trucks, and the warehouse building in which a percentage of the coffee and rice was being prepared for interstate shipment. Under such circumstances, we are constrained to believe that the night watchman, while guarding the warehouse in which the interstate shipments were being processed for distribution, was in some measure also engaged in the "production of goods for commerce", within the coverage of the Act. See Walton v. Southern Package Corp., 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298; Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Cf. Mabee v. White Plains Pub. Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607.

We find no merit in appellant's contention that the watchman is not engaged in commerce or the production of goods for commerce because none of the interstate shipments are made at night. The fact that protection from fire and theft is required at night, when the need for it is probably greatest, is no basis for denying coverage to an employee so engaged. Cf. Walton v. Southern Package Corp., 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298.

Affirmed.