**DURKIN, Secretary of Labor, v. JOYCE AGENCY, Inc.**

**No. 49 C 1558.**

United States District Court
N. D. Illinois, E. D.

March 19, 1953.

William S. Tyson, Sol., John J. Babe, Asst. Sol.; and James M. Miller, Sup. Atty., U. S. Dept. of Labor, Washington, D. C., Herman Grant, Reg. Atty., Richard W. Proctor, Atty., Chicago, Ill., for plaintiff.

Stanford Clinton and Jay A. Pritzker, Chicago, Ill., for defendant.

PERRY, District Judge.

Plaintiff brings this action under Section 17 of the Fair Labor Standards Act of 1938, as amended, to enjoin the defendant from violating Sections 17 and 15(a) (2) of the overtime provision of the Act, 29 U.S.C.A. §§ 217, 215(a) (2).

The complaint filed October 13, 1949, alleges that the defendant has since October 1, 1940, employed employees in interstate commerce and in the production of goods for interstate commerce at the warehouses of Goldblatt Brothers, Inc., located at 3913 South Wentworth Avenue, 3161 South Ashland Avenue, 201 East 63rd Street, 328 South Wabash Avenue, the Lexington Bakery and Martin Food Products, Inc. and at defendant's central office all located in Chicago, Illinois, without compensating the employees for hours worked in excess of 40 hours per work week at the overtime rate required by Section 7 of the Act, 29 U.S.C.A. § 207.

The principal issue is whether the defendant's employees were engaged in interstate commerce or the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act.

Since the defendant has complied with the Act in the case of its employees at the Lexington Bakery since May 2, 1949, and since it has no employees at the Martin Food Products since July 3, 1949, both prior to the filing of this action, the Court considers the question as to defendant's compliance in these two instances as moot. The employees at these establishments, therefore, are not the subject of this decision.

Goldblatt Brothers, Inc. operates a huge merchandise system, involving an annual sale of goods in excess of 90 million dollars a year through 14 retail stores. Approximately 20% of the total sales are made by three Indiana stores and a very large percentage of these goods are distributed from the four warehouses directly to the stores in Indiana by means of Goldblatt's own motor transportation system consisting of 127 trucks, 70 trailers and 17 tractors. Goldblatt Brothers carry a large amount of fire and extended coverage, sprinkler leakage and hold-up insurance on the warehouses and contents and the motor fleet and its activities. Availability of such insurance and the premiums charged therefor is favorably affected by the employment and presence of the defendant's employees.

The sales value of the merchandise handled annually by each warehouse ranges between a figure in excess of 30 million dollars at the Wentworth Avenue warehouse and 10 million dollars at the 63rd Street warehouse. Exclusive of the Wabash Avenue establishment, the warehouses receive regularly and daily no less than 50% of the merchandise from points outside of the State of Illinois. Between 17 and

20% of this merchandise is shipped from three warehouses to points outside of the State. Approximately 22% of the goods received at the Wabash Avenue warehouse is received regularly and daily from outside of the State and 2% is shipped to Goldblatt Brothers' customers outside of the State of Illinois. Goldblatt Brothers, Inc. employs persons at all warehouses, who are engaged in receiving, unloading, checking, unpacking, storing, handling, assembling, repacking for delivery, servicing, transporting to store runs, distributing and the shipping of merchandise to Goldblatt Brothers' department stores and customers.

The defendant is an Illinois corporation with an office at 343 South Dearborn Street, Chicago, Illinois. It is engaged in the business of furnishing watchman, guard, detective, fire inspection and shopping services to Goldblatt Brothers, Inc. All of the Joyce employees have worked and for the most part are now working in excess of 40 hours a week. They are paid either a weekly salary or an hourly rate and are not paid the statutory overtime required by Section 7 of the Act.

The defendant offers Goldblatt Brothers a highly systematic protection service, which exceeds the normal watchman activity. This service which can be divided into that rendered by the day guards and night watchmen is basically the same in all four warehouses. The primary difference is found in the number of employees used by defendant at the various warehouses to administer this protective service. The number of guards and watchmen at each warehouse seems to be determined by the volume of business activity at each establishment. In general, the defendant's employees are entrusted with the duty and responsibility of guarding Goldblatt Brothers' premises and contents from fire, theft and other hazards. The defendant's guards maintain a close watch over all stages of the respective operations on both the receiving and shipping platforms. They guard, lock and unlock the doors to both platforms and check the traffic of persons at the front door and the shipping platform where only authorized personnel are allowed. They make and maintain memoranda regarding valuable shipments leaving the shipping platforms. These memoranda are transmitted to the front door guard, who in turn notifies by telephone the service guard at the designated retail store. The guards maintain and distribute the stock of truck and trailer seals, guard and check the locks and seals on all incoming and outgoing vehicles, and control the departure of all vehicles. They make telephone calls inside and outside the State relaying information concerning incoming and outgoing goods. They also receive communications from the central office and maintain an instruction log. The guards make up the payroll and handle information and reports on all thefts and recoveries.

The night watchmen patrol the entire premises, guard the goods in all stages of being received, handled, stored, prepared for shipments and shipped including those enroute to the shipping platform and on the receiving and shipping platforms, as well as in the railroad cars and motor trucks and trailers in the truck pit, together with the cars, trucks and trailers themselves from fire, theft and other damage.

It is the plaintiff's contention that Goldblatt's employees at each of the warehouses are engaged in interstate commerce and in the production of goods for interstate commerce. From this premise it follows that the guards and watchmen employed by the defendant who guard and watch the goods as they are produced and as they are moving in interstate commerce to and from the warehouses, together with the trucks and freight cars which are the instrumentalities of such commerce and who otherwise participate in the activities there carried on, are also engaged in commerce and the production of goods for commerce.

The defendant denies that its employees are engaged either in interstate commerce or in the production of goods for such commerce. The defendant further contends that its employees are exempt by virtue of the provisions of Section 13(a) (1) and (2) of the Act.

■ ▓▓▓ The Act is designed for the benefit of those employees who are either engaged in interstate commerce or in the production of goods for commerce. Where, as in the case before the bar, the warehouse activities, among other things, consist of the receiving and unloading of goods arriving from other states and of the shipping of goods into other states, such activities are an engagement in interstate commerce. Walling v. Goldblatt Bros., 7 Cir., 128 F.2d 778. Employees, whose activities contribute so materially and directly or are so closely related to interstate commerce as to be in practice and legal contemplation a part thereof, are to be considered as engaged in interstate commerce, and are, therefore, within the provisions of the Fair Labor Standards Act. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. It is the view of this Court that both the day guards and night watchmen, employed by the defendant in the various warehouses do, by virtue of their activities, contribute so materially and directly to interstate commerce as to be a part thereof, and are, therefore, within the provisions of the Act. Their activities cannot be considered as remote local services. They are the integral components of a highly systematic security system which is as important and vital a part of this commerce as traffic control and other warehousing and shipping techniques. This is borne out by the fact that the protection service is given not only at the warehouse premises but also during the course of transportation itself, by means of telephonic communications regarding shipments to designated stores. The fact that the night watchmen assume none of these operational duties, but are limited, more or less, to the patrolling and guarding of the premises during the night hours does not withdraw them from interstate commerce. They guard against fire, theft, and other hazards, during a time of greater need, not only the wares, which are in the process of being received as well as shipped in interstate commerce, but also the vehicles, which are the instrumentalities of that commerce.

Walling v. Sondock, 5 Cir., 132 F.2d 77, certiorari denied, 318 U.S. 772, 63 S.Ct. 769, 87 L.Ed. 1142; Slover v. Wathen, 4 Cir., 140 F.2d 258; Russell Co. v. McComb, 5 Cir., 187 F.2d 524.

■■ If this Court is to hold that the defendant's employees are engaged in the production of goods for interstate commerce, it must find that they are engaged "in any closely related process or occupation directly essential to the production thereof". 29 U.S.C.A. § 203(j). The Court, therefore, must first determine whether the activities of the Goldblatt employees in the warehouses are production of goods for interstate commerce. Production means "handled, or in any other manner worked on". 29 U.S.C.A. § 203(j). The terms, "handled" or "worked on" include every kind of incidental operation preparatory to putting goods into the stream of commerce. Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414; Engebretsen v. E. J. Albrecht Co., 7 Cir., 150 F.2d 602. Under this judicial interpretation, the manifold activities of Goldblatt's employees in picking, handling, checking, packing and transporting goods destined for Goldblatt's Stores or customers outside the State of Illinois constitute the "production for commerce within the meaning of the Act."

It is the view of this Court that the defendant's employees in the warehouses are engaged in the production of goods for commerce because they are engaged in a "closely related process or occupation directly essential to the production" of goods for commerce which is being carried on at the various warehouses. The importance of this protection service, as previously outlined when the employees' engagement in commerce was discussed, is equally applicable to the production of goods for commerce. The favorable effect of this protection service upon the Goldblatt insurance program also serves to emphasize its importance. It has repeatedly been held that guards and watchmen of premises, where production of goods for interstate commerce is carried on, are also engaged in the production of goods for

commerce by virtue of their relationship thereto. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walton v. Southern Package Corp., 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298; Engebretsen v. E. J. Albrecht Co., supra, Russell Co. v. McComb, supra.

The defendant claims that the majority of the decisions relating to guards and watchmen were decided prior to the 1949 amendment when the pertinent statutory phrase of Section 3(j) read as follows: "or in any process or occupation necessary to the production thereof". These decisions, therefore, are not applicable under the present restricted amendment. This contention cannot be sustained. The legislative history of the amendment clearly indicates that there was no intention to overturn the existing law and exclude this class of employees from coverage by the Act. A careful examination also indicates that the amendment is expressed in the language of the Kirschbaum case. The traditional and prevailing view on this class of employees was adopted in the case of Russell Co., Inc., v. McComb, supra, decided after the amendment.

At the defendant's central office, the bookkeeper handles every phase of the defendant's payroll for its employees at each Goldblatt establishment including Indiana. She also prepares cash disbursement reports covering the defendant's operations in every Goldblatt establishment. The statement clerk receives and maintains records regarding the arrest of shoplifters and dishonest employees at all Goldblatt establishments. She relays to the guards any information she might have at the time of arrest, and checks prospective Goldblatt employees against these records. Finally, the statement clerk prepares a monthly statement of arrests and goods returned, and submits it to Goldblatt. Both use the mails extensively in carrying out these duties. Until April 1, 1951, the switchboard operator handled all calls, including the calls to Indiana stores. She transmitted information relative to shipments across the state lines as well as bad checks cashed at all Goldblatt stores and warehouses. Since that date, these duties are being performed by the bookkeeper and statement clerk.

The interstate telephone activity of these three employees as well as the interstate use of the mails by the bookkeeper and the statement clerk in order to conduct the defendant's business throughout the entire Goldblatt enterprise is an engagement in interstate commerce, thereby bringing these employees within the provisions of the Act. Furthermore, their employment activities effectuate the coordination, integration and orderly administration of the defendant's protection service at the warehouses, where there is production of goods for commerce. Since these accomplishments are as important to the service as the very acts of protection, these employees are engaged in a "closely related process or occupation directly essential to the production thereof". Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865.

The defendant's fire inspector works out of the central office. He inspects all Goldblatt stores and warehouses to insure compliance with the regulation of insurance association underwriters to prevent cancellation of insurance and to obtain compliance with the city fire ordinance. He inspects the Indiana stores biweekly, the warehouses weekly. He inspects fire extinguishers and sees that they are properly loaded at all times. He supervises two fire drills a year at each Goldblatt establishment.

The inspector's activities at the warehouses contribute so materially to interstate commerce as to be a part of it. This and his interstate travel places him in interstate commerce, and, therefore, within the Act. His activities at the warehouses, where there is production of goods for commerce, is directly essential to the production thereof. His duties are as important to fire protection as the actual guarding against fire itself. Compare Walton v. Southern Package Corp., supra.

The defendant's employees are not exempt under the provisions of Sec. 13(a) (1), which exempts those employed in a bona fide executive, administrative,

professional capacity or local retailing capacity or in the capacity of outside salesmen. Their duties do not meet the requirements, which have been set down by the Administrator. Regulations, Part 541, 29 U.S. C.A.Appendix. They do not render professional or sales services. They have nothing to do with management policies. These employees are performing the routine tasks of assisting in the general administration of the defendant's business. Furthermore, the defendant's employees are not employed in a "local retailing capacity," as the term is defined by the Administrator. Their duties do not consist of the making of retail sales nor of the performance of work immediately incidental to such retail sales, such as the weighing, wrapping or the delivery of merchandise to a customer. Explanatory Bulletin Regulations Part 541.-401.

The defendant's employees are not exempt as a "retail or service establishment" under the provisions of Section 13(a) (2) of the Act. They are not engaged in the sale of goods nor are they employed in or by a retail establishment. They are not engaged in that type of "service" to which the exemption refers, namely, a service "performed by establishments which are traditionally recognized as local retail service establishments such as the restaurant, hotel, barber shop, repair shops, etc." Interpretative Bulletin, Sec. 779.7. It is significant that the aforementioned Administrator's Bulletin, based upon his experience, legislative history and judicial decisions, does not classify an establishment of the defendant's type as retail. Section 779.10. The Courts may properly look to these bulletins for guidance. Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124.

The plaintiff's prayer for reparation by the defendant to its employees in the amounts due to them by reason of the defendant's violations of the Act is denied because the Court does not have jurisdiction of these matters in this proceeding for an injunction. 29 U.S.C.A. § 217.

An appropriate decree will be entered in favor of the plaintiff.