James P. MITCHELL, Secretary of Labor, Department of Justice, Plaintiff,

v.

T. F. TAYLOR FERTILIZER WORKS, Inc., a Corporation, Defendant.

Civ. A. No. 359.

United States District Court
M. D. Georgia, Thomasville Division.
July 7, 1955.

Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, Birmingham, Ala., for plaintiff.

Waldo DeLoache, Moore, Gibson, DeLoache & Gardner, Moultrie, Ga., for defendant.

BOOTLE, District Judge.

The Secretary of Labor seeks an injunction against T. F. Taylor Fertilizer Works, Inc., for alleged violations of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. At a pre-trial conference it was settled that the only issues are:

(a) Whether defendant's sales are recognized as retail sales in the particular industry.

(b) Whether defendant's office and plant constitute one establishment, or two separate establishments.

(c) Whether defendant's office and plant each qualifies as an exempt retail establishment within the meaning of Title 29, U.S.C.A. § 213(a)(2) and is recognized as a retail establishment in the particular industry within the meaning of Title 29, U.S.C.A. § 213(a)(4).

Upon the trial without a jury, these facts appeared:

The defendant is a corporation with a fertilizer plant, known as a dry mixing plant, located on Sixth Street in Moultrie, Georgia, where it regularly receives from out of state points raw materials in rail carload shipments. These raw materials are used in the manufacture of commercial fertilizers, all of which are sold to farmers within the Moultrie area. None of the fertilizer is sold to purchasers for resale, but the fertilizers are purchased by the farmers and actually used by them in the production of their crops. The manufacturing plant is located in the industrial part of the city. The manufacture of fertilizer is conducted from September through May and part of June each year. During some years the plant has been used as a tobacco warehouse during July and August. The office of the defendant is located in the business district of the city, about five blocks, or approximately 1,500 feet, from the manufacturing plant. The sales of fertilizer are approved in the office. Orders are turned in and credit passed upon at the office. About one-half of the orders are taken at the office, all sales being made direct by salaried employees of defendant to the farmers. The farmers pick up the fertilizer at the plant in their own vehicles, or the fertilizer is delivered from the plant to the farmers in defendant's trucks.

Defendant's price list shows that the fertilizer is priced to the farmers in amounts indicated per ton. One price is quoted for cash and another price is quoted for time purchase of fertilizer. The cash price contemplates payment

within 30 days, but a discount of 5% is allowed for the payment of cash on delivery or within ten days. This discount is not allowed on Soda, ANL, Ammonia Nitrate, 10–0–10, 15–0–14, or Potash. These prices are quoted on basis of delivery of fertilizer at the farm and when the farmer picks up the fertilizer in his own truck, an additional deduction is made of $1.50 per ton for 20 miles, $2.00 per ton for 20–40 miles, and $2.25 per ton for all over 40 miles.

All sales of fertilizer are made direct to the farmers, there being nobody in between the defendant and the farmer. The orders are taken and the invoices written up at the office, but all deliveries are made from the plant. The daily capacity of the plant is from 400 to 500 tons. The seasonal capacity is from 13,000 to 15,000 tons. Only upon rare occasions is a sale of fertilizer made in a quantity of less than a ton. The average sale of fertilizer is from 12 to 15 tons valued at from $600 to $800. Roughly 60% of the sales are made for cash and about 40% on credit. The credit sales are usually paid off after the farmer has made his crop upon which the fertilizer has been used.

There will probably be no disagreement among parties or counsel as to the above findings of fact. There is a strong disagreement, however, as to additional findings which the Court must make from the following testimony:

Mr. T. F. Taylor, president of defendant, testified that he had been in the fertilizer business continuously for thirty years; that the defendant operates strictly a dry mixing plant; that defendant's type of operation is regarded in the industry as a retail establishment because there is no wholesaling of fertilizer at all; that defendant's process is fairly typical of the average retail fertilizer establishment in South Georgia and that most fertilizer plants have separate offices.

Mr. J. L. Pilcher, a Congressman, testified that he had been in the fertilizer business about 31 or 32 years and had been operating a fertilizer mixing plant for about 10 or 12 years. He testified that in his personal opinion the defendant's type of operation is regarded as a retail establishment in the fertilizer industry.

Mr. L. D. Hand, president of Pelham Phosphate Company, testified that he had been connected with the Pelham Phosphate Company for 27 years and that his company sold most of its products for resale and that he did not consider his operation a retail operation. He testified that the defendant's operation would be regarded as a retail operation in the industry.

It was stipulated and agreed that J. W. Toney and Winston Shepard, witnesses called by the defendant, have fertilizer establishments similar to Mr. Taylor's and Mr. Pilcher's and that they would testify to the same facts to which T. F. Taylor and J. L. Pilcher testified. As a result of that stipulation, witnesses Toney and Shepard were not called because their testimony would be cumulative.

Dr. Theodore N. Beckman, Professor of Business Organization at Ohio State University, Columbus, Ohio, and Consulting Economist, qualified as an expert, and testified for plaintiff that in his opinion the defendant's plant is not recognized as a retail establishment in the fertilizer industry. He discussed the basis for his opinion, the substance of which was that the plant is engaged in processing or the creation of form utility which is not recognized as retail. He testified that in the "Census of Manufacturers: 1947" fertilizer mixing plants are recognized as manufacturing establishments and that defendant's plant would fall in that category.

Dr. Beckman testified further that in his opinion the sales of fertilizer by defendant to the farmers are not recognized as retail sales in the fertilizer industry. He discussed the definition of a retail sale and referred to his book, "Principles of Marketing", by Maynard and Beckman, Chapter 8, "The Retailing Structure", pages 138, 139 and placed

emphasis on the conception that a retail sale is the activity of selling to ultimate consumers for personal or household consumption. He emphasized that the sale of fertilizer to farmers is not a sale for personal or household consumption, but is a sale for production purposes which he says eliminates the sale from the retail concept.

Dr. Beckman referred also to the book "Wholesaling Principles and Practice", by Beckman and Engle, and placed emphasis upon the concept that wholesaling includes all marketing transactions in which the purchaser is actuated solely by a profit or business motive. He said that purchase of fertilizer by the farmers is motivated by the urge to increase the profits of their farming operations rather than to satisfy a personal or household need and that the sale is a sale for production purposes. His conclusion is that sales of fertilizer to farmers are not retail sales because the fertilizer is used for production purposes. In support of this reasoning, he quoted again from the book "Wholesaling Principles and Practice", where farmers buying goods for farming purposes are treated as industrial consumers, not as ultimate, personal or household consumers.

Dr. Beckman looks upon defendant's plant as a manufacturing establishment not recognized in the industry as a retail establishment and looks upon the office of defendant as a manufacturer's sales office.

From the foregoing conflicting views and opinions, the Court makes additional findings of fact as follows:

(a) Defendant's sales are recognized as retail sales in the particular industry here involved, namely, the fertilizer industry.

(b) Defendant's office and plant constitute one establishment.

(c) Defendant's office and plant thus constituting one establishment qualifies as an exempt retail establishment within the meaning of Title 29 U.S.C.A. § 213 (a) (2) and is recognized as a retail establishment in the particular industry

here involved, namely, the fertilizer industry, within the meaning of Title 29 U.S.C.A. § 213(a) (4).

This case, under the above findings of fact, is controlled by the provisions of Section 13(a) (2) and (a) (4) of the Fair Labor Standards Act, Title 29 U. S.C.A. § 213(a) (2) and (a) (4), which reads as follows:

"Section 13(a). The provisions of sections 6 and 7 shall not apply with respect to * * *

"(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale *and is recognized as retail sales or services in the particular industry;* * * *

"(4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and *is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells:* Provided, That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located; * * *." (Emphasis supplied.)

Under the pre-trial order, entered by agreement of counsel for both parties, the exemption afforded by the above quoted sections is available, if,

(a) (under 29 U.S.C.A. § 213(a) (2)), defendant's establishment is a "retail * * * establishment", that is, if 75 per centum of its annual dollar volume of sales "is recognized as retail sales * * * in the particular industry," it being

agreed that none of said sales is for resale, and

(b) if, (under 29 U.S.C.A. § 213(a) (4)), said establishment "is recognized as a retail establishment in the particular industry." To state it differently, defendant must be a "retail establishment" (clause 2). To be that 75 per centum of its sales must be "recognized as retail sales * * * in the particular industry" (clause 2). Then the "retail * * * establishment" of clause 2 must be "recognized as a retail establishment in the particular industry."

In this case, we are not concerned with the various percentages contained in the statute. By the pre-trial order, based upon agreement, all question of percentages involved in these Sections were resolved in defendant's favor, except the requirement under clause 2 that "75 per centum of whose annual dollar volume of sales of goods * * * is recognized as retail sales * * * in the particular industry", and we are not concerned with that percentage because, under the evidence, all of defendant's sales are alike and if any of them are recognized as retail sales, all of them must be so recognized.

The ultimate and short question, therefore, is: Are defendant's sales recognized as retail sales in the industry and is defendant's establishment recognized as a retail establishment in the industry.

The contention of plaintiff that the office is one establishment and the mixing plant another has not been overlooked, but must be decided against the plaintiff on the basis of Walling v. Goldblatt Bros., 7 Cir., 1945, 152 F.2d 475, 478, which held that the employees of a warehouse which served the retail establishment of a single retail store were within the exemption and thus that the warehouse and store constituted one establishment. This ruling was approved in Bogash v. Baltimore Cigarette Service, Inc., 4 Cir., 193 F.2d 291, 294.

It would not dispose of this case to say that in some circles or connections defendant's business is looked upon or classified as a manufacturing business. The statute which creates the exemption permits the establishment which claims the exemption to make or process the goods that it sells. Thus, the defendant may be a manufacturer and at the same time be a retail establishment.

Nor would it dispose of this case to say that some authors, economists and classifiers do not classify a business like defendant's as a retail establishment, nor sales like defendant's as retail sales because of their opinions that the business is predominantly a manufacturing business, and because of their opinions that in classifying sales special emphasis must be placed on the concept that a retail sale is the activity of selling to ultimate consumers "for personal or household consumption" and not "for production purposes" and that the purchasers must not be motivated by the "urge to increase the profits of their farming operations." This is not to say that there may not be plausibility and force in these concepts and in these suggested methods of classification. This case must be controlled, however, by the fact as disclosed by the evidence that these concepts have not as yet found acceptance in the fertilizer industry. The evidence shows that defendant's sales are recognized as retail sales in the fertilizer industry and that defendant's establishment is recognized as a retail establishment in said industry.

There is ample foundation for this recognition in the law. In White Motor Co. v. Littleton, 5 Cir., 1941, 124 F.2d 92, 93, the Court said:

"The word *retail* is not defined by the Act. Given its common and ordinary acceptation when used in sales parlance, it means a sale in small quantity or direct to the consumer, as distinguished from the word *wholesale,* meaning a sale in large quantity to one who intends to resell. The character of the sale is not altered by the use to which the consumer may put the purchased commodity. These sales were pre-

ponderantly retail although the products sold were used subsequently for commercial purposes."

In the earlier case of Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F. 2d 90, 92, the same court had said: "If therefore defendant were otherwise a retail dealer, we should hold it exempt though the retail sales were made to commercial rather than to private users."

"To come within the exemption, the employee must be engaged in a 'retail establishment' as that phrase is understood by the common run of men. Walling v. Consumers Co., 7 Cir., 1945, 149 F.2d 626. The essential distinction between a wholesaler and a retailer is that the person buying from a retailer is the ultimate user or consumer of the article or commodity and does not sell it again, whereas the one buying from a wholesaler buys only for the purpose of selling the article again. Zehring v. Brown Materials, Limited, D.C.S. D.Cal.1943, 48 F.Supp. 740." Haynie v. Hogue Lumber & Supply Co. of Gulfport, D.C.Miss., 96 F.Supp. 214, 216.

In defining the word *wholesaler*, the court, in the case of Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 2 Cir., 227 F. 46, said that if occasionally in some particular business the term loses somewhat of its original significance, such manifestly, was not the fact with the business then under consideration. Likewise, in this case we may say that if the word *retail* in some particular business loses somewhat of its original significance or takes on some added significance, such manifestly, is not the fact with the business now under consideration.

On the facts of this case, the Court is of the opinion, and concludes as a matter of law, that the defendant's sales are recognized as retail sales in the particular industry; that the defendant's office and plant constitute one establishment and that said establishment qualifies as an exempt retail establishment within the meaning of Title 29, U.S.C.A., § 213(a) (2) and is recognized as a retail establishment in the particular industry within the meaning of Title 29, U.S.C.A. § 213(a) (4).

I conclude further as a matter of law that this court has jurisdiction of this case under the provisions of Section 17 of the Act, 29 U.S.C.A. § 217, that no sufficient cause has been shown for the issuance of an injunction and that, under the foregoing findings of fact and these conclusions of law, no injunction in this case should be issued.