Arthur J. **GOLDBERG**, Secretary of Labor, United States Department of Labor, Appellant,

v.

Harry **SORVAS**, Individually and Doing Business as Merit Protective Service, Appellee.

No. 13371.

United States Court of Appeals Third Circuit.

Argued March 7, 1961.

Decided Sept. 1, 1961.

Bessie Margolin, Washington, D. C. (Harold C. Nystrom, Acting Sol. of Labor, Beate Bloch, Attorney, United States Department of Labor, Washington, D. C., Ernest N. Votaw, Regional Attorney, Chambersburg, Pa., on the brief), for appellant.

Gustav W. Wilde, Pittsburgh, Pa. (Burgwin, Ruffin, Perry & Pohl, by Paul G. Perry, Pittsburgh, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the Western District of Pennsylvania[1] refusing a motion (and a judgment dismissing the complaint) of the appellant, James P. Mitchell, Secretary of Labor (the Secretary),[2] in which he sought a permanent injunction to enjoin defendant Harry Sorvas, individually and doing business as Merit Protective Service (Sorvas), from violating the minimum wage, overtime and record-keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.[3] (Act).

1. The opinion of the United States District Court is found in 182 F.Supp. 800.

2. Pending this appeal Arthur J. Goldberg became Secretary of Labor and was substituted as plaintiff.

3. In his complaint the Secretary charges that Sorvas repeatedly violated and is violating since June 10, 1956 the minimum wage, overtime and record-keeping provisions of the Fair Labor Standards Act as amended. 29 U.S.C.A. §§ 206, 207, 211 (c), 215(a) (1), 215(a) (2) and 215(a) (5).

The facts are simple and undisputed. The appellee, Harry Sorvas, maintains an office in Pittsburgh where he does business under the trade name of Merit Protective Service, chiefly in the western part of Pennsylvania and on occasion in certain cities in Ohio, West Virginia, Kentucky and other states. He is engaged in what is called a "shopping service" consisting of reporting to retail establishments on the qualities of their clerks and salesmen. The means by which he accomplishes this is through his employees who visit the establishments of his clients in crews of usually two or three. They pretend to be customers and independent of each other observe the general conditions of the establishment, make purchases from the sales people and report on their honesty, efficiency and other attitudes to the crew supervisor on forms provided for the purpose. He in turn transmits the reports by mail or delivers them personally to the Pittsburgh office, where they are checked and mailed to the clients. In the event that merchandise has been purchased during an investigation it is returned to the client and Sorvas is reimbursed therefor.

Sorvas renders other services in the way of business surveys when requested but he is principally concerned in the so-called "shopping service".

There are a number of concerns trading under the same name, Merit Protective Service,[4] throughout the country, but they are completely disassociated from each other except that they exchange information and unite in such mutual matters as promulgating report forms and payment for advertising. When other Merit concerns have accounts in his territory Sorvas has serviced them, sending his reports to the forwarder who submits them to his client and pays Sorvas. This type of forwarding business did not amount to more than 10 percent of the annual dollar volume of Sorvas's gross business.

If the investigation is to be conducted locally or nearby the employee reports to the Pittsburgh office and from there goes to the store where the testing is to be done, customarily filing the report immediately after the test has been made. Stores are visited all during the day until their closing time usually at five or six o'clock. Visits are also made to stores that remain open evenings.

When trips are made out of town, sometimes for as long as a week, the crew is transported in the automobile of the supervisor. A schedule of towns and the stores in them which are to be worked is prepared beforehand and trips between the towns are usually made in the evenings after the inspections are completed so as to be ready to work when the stores open in the next town. Sorvas pays for the lodging and food for the crew.

On occasion all inspections might be completed before the close of the day and the employee would have some free time to do as he pleased. Between 20 percent and 25 percent of Sorvas's gross annual receipts came from out of state clients.

Full and part time crew members were employed on a basis of five days to the week, Monday through Friday, receiving wages beginning at $8.00 per day. They received no overtime as provided under Section 7 of the Act (29 U.S.C.A. § 207) except that if they worked the sixth day, Saturday, they were paid at the rate of time and a half.

At the trial Mr. Sorvas testified, among other things, that his business was regarded in the "shopping service industry" as retail. He based this conclusion on the ground that he dealt with retail concerns and that he sold nothing except his service. A witness called on his behalf, George C. Krohe, manager of Isalys Dairy Stores, a client of Sorvas, testified that he had dealt with two other firms rendering the same type of service as Sorvas and he considered the service to be retail in nature since it was not

4. Sorvas purchased his franchise for the business and name from the original Merit Protective Corporation of New York in 1946.

resold and that, in his opinion, the "shopping service industry" considered itself to be retail.

The Secretary called several of Sorvas's employees to establish working conditions, a government investigator and Dr. Robert Entenberg, as an expert in retailing. Dr. Entenberg gave his opinion that the shopping service furnished by Sorvas would not fall within the definition of a "retail sale or service".

The District Court held that Sorvas was engaged in interstate commerce but denied the relief requested in the complaint upon the ground that Sorvas was exempt from the Act's requirements under Section 13(a) (2) as amended in 1949.[5] No question is raised as to the correctness of the ruling on commerce.

The District Court found that Sorvas was obliged to meet three tests imposed by Section 13(a) (2) to be entitled to exemption namely:

"1. More than one-half of the annual dollar volume of sales of goods or services must be made within the state where the business is located.

"2. At least 75 percent of the gross volume of sales of goods or services must not be for resale.

"3. At least 75 percent of sales of goods or services must be recognized as retail sales or services in the industry." [182 F.Supp. 802.]

It concluded that all three conditions were fulfilled by Sorvas, in that:

First, it was undisputed that less than 25 percent of his gross volume of business is earned outside of Pennsylvania.

Second, the total received from services which might be considered for resale was under ten percent of his gross volume.

Third, Sorvas sustained the burden of showing that recognition exists in the industry that his "sales are retail".

The sole issue on this appeal is whether the District Court was correct in its ruling that Sorvas's employees are engaged in a retail or service establishment and therefore are exempt under the Act.

The Secretary contends principally that Sorvas's business is an establishment outside the scope of the Section 13(a) (2) exemption provision of the Act because the pre-1949 amendment non-exempt status of comparable establishments was not changed by the 1949 amendment.

In brief, Sorvas submits that he has met his burden of substantiating through credible testimony that his business was plainly and unmistakably within the exemption; that the Secretary may not have this case reviewed on a new theory not raised before the District Court—namely—that a non-exempt status for the business was determined by the Administrator of the Wage and Hour Division of the United States Department of Labor and that such determination was not changed by the 1949 amendment—and that the Secretary's position in regard to the 1949 amendment is based upon a misrepresentation of the effects of the rulings of the Supreme Court in Mitchell v. Bekins Van & Storage Co., 1957, 352 U.S. 1027, 77 S.Ct. 593, 1 L.Ed.

---

5. The pertinent provisions of the statute read:

"§ 213. Exemptions

"(a) The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of

sales of goods or services (or both) is not for resale and is recognized as retail sales or services in the particular industry; * * * *" 29 U.S.C.A. § 213(a) (2).

Prior to the foregoing enactment the Act read:

"§ 13. (a) The provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * * *" 52 Stat. 1060, 1067.

2d 589; Mitchell v. Kentucky Finance Co., 1959, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 and Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393.

In Mitchell v. Kentucky Finance Co., supra, the Court considered whether making small personal loans and purchasing conditional sales contracts from dealers in furniture and appliances constituted services by a "retail or service establishment" within the meaning of Section 13(a) (2) of the Act. The Court noted:

> "The legislative history of the 1949 amendment to § 13(a) (2) demonstrates beyond doubt that Congress was acting in implementation of a specific and particularized purpose. Before 1949 the Administrator, in interpreting the term 'retail or service establishment,' then nowhere defined in the statute, had, in addition to excluding from the coverage of the exemption personal loan companies and other financial institutions, ruled that a business enterprise generally would not qualify as such an establishment unless 75 percent of its receipts were derived from the sale of goods or services 'to private persons to satisfy their personal wants,' on the theory that sales for business were 'non-retail.' This administratively announced 'business use' test was generally approved by this Court in Roland Electrical Co. v. Walling, 326 U.S. 657 [66 S.Ct. 413, 90 L.Ed. 383].

> "Congress was dissatisfied with this construction of the statute, and over the objection of the Administrator, who sought to have his 'business use' test legislatively confirmed, passed the 1949 amendment to § 13(a) (2) to do away with the rule that sales to other than individual consumers could not qualify as retail in deciding whether a particular business enterprise was a 'retail or

service establishment,' and to substitute a more flexible test, under which selling transactions would qualify as retail if they (1) did not involve 'resale,' and (2) were recognized in the particular industry as retail. We find nothing in the debates or reports which suggests that Congress intended by the amendment to broaden the fields of business enterprise to which the exemption would apply. Rather, it was time and again made plain that the amendment was intended to change the prior law only by making it possible for business enterprises otherwise eligible under existing concepts to achieve exemption even even though more than 25 percent of their sales were to other than private individuals for personal consumption, provided those sales were not for resale and were recognized in the field or industry involved as retail." (Footnotes omitted.) 359 U.S. at pages 293–294, 79 S.Ct. at page 758.

The crux of the question was whether the nature of the defendant's enterprise was "retail". The Court looked to the pre-1949 rulings of the Administrator and found that "personal loan companies and other business entities in what may broadly be called the 'financial industry' were not within the scope of" the Section 13(a) (2) exemption, citing Interpretive Bulletin No. 6, 1942 W. H. Manual 326, §§ 29–31 which was carried over under the amended version of Section 13(a) (2), 29 C.F.R.1958 Supp. § 779.10. Further the Court stated that, "When Congress amended the Act in 1949 it provided that pre-1949 rulings and interpretations by the Administrator should remain in effect unless inconsistent with the statute as amended. 63 Stat. 920." It concluded that the business of making small personal loans and purchasing conditional sales contracts from dealers in furniture and appliances did not come within the meaning of the exemption.[6]

---

6. In Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 391–392, 80 S.Ct. 453, 456, the Court reiterated the purpose of the 1949 amendment, stating:

Circumstances in the instant case are not identical with those in the Kentucky Finance case but the need to determine whether a service rendered was within the retail concept before 1949 is equally present in this case.

Prior to 1949 the Administrator had not specifically named "shopping service" establishments as excluded from the Section 13(a) (2) exemption. However, as early as 1941 the following service type businesses among others, were listed by the Administrator as not in the ordinary case sufficiently similar in character to retail establishments to be considered service establishments within the meaning of § 13(a) (2):

> " * * * [E]stablishments engaged in supplying business, financial, and statistical reporting data; * * * adjustment and credit bureaus and collection agencies; credit-rating agencies; * * * [and] employment agencies." [7]

The analogy between "establishments engaged in supplying business, financial, and statistical reporting data," "adjustment and credit bureaus and collection agencies", "credit rating agencies" and the services offered by Sorvas is so striking as to be obvious. Clearly the Administrator was not attempting to name every form of "retail and service" business in his interpretative regulation. He was giving illustrations of categories into which this case fits.

> "This Court had occasion at the last Term to point out that the 1949 revision does not represent a general broadening of the exemptions contained in § 13 [Mitchell v. Kentucky Finance Co., supra]. Rather, Congress 'was acting in implementation of a specific and particularized purpose' to replace the unsatisfactory 'business use' test which had developed around the 1938 provision, with a formula that would be at once flexible and at the same time provide clear statutory guidance to the Administrator." (Footnotes omitted.)
>
> Sorvas submits that the word "general" used here is a significant recognition by the Court that the 1949 amendment broadens the scope of the exemption but the contention is not justified.

Congress made plain its intention that in adopting the 1949 amendment to Section 13(a) (2) it was only clarifying the existing exemption by defining the term retail or service establishment and stating the conditions under which the exemption shall apply in order to obviate the sweeping ruling of the Administrator and the courts that no sale of goods or services for business use is retail.[8] Its only effect was to confirm the exemption for the various local neighborhood businesses which the original 1938 statute sought to exempt and which were traditionally regarded as retail.[9]

After the passage of the 1949 amendment the Administrator revised his Interpretative Bulletin.[10] In considering the general subject of the Section 13(a) (2) retail or service exemption; the legislative background leading to the amendment; the application of the retail concept and the characteristics of a retail or service establishment, among other things, he stated:

> " * * * [T]here are establishments which carry on their activities as a part of the process of the production of goods, and establishments which have a specialized function to perform in the industrial, mercantile or financial organization of the nation; such establishments, typically, provide financial, commercial, and industrial enterprises with specialized goods or services which

7. Interpretive Bull. No. 6, Office of the Administrator of the Wage and Hour Division of the United States Department of Labor. "Retail and Service Establishments", June 1941, Paragraph 29.

8. Conference Report. Statement of the Managers on the part of the House, H. Rept. 1453, p. 24; see Roland Electrical Co. v. Walling, 1945, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383.

9. Congressman, Lucas, sponsor of the 1949 amendment in the House, 95 Cong.Rec., p. 11,004 and p. 11,116.

 Senator Holland, sponsor of the amendment in the Senate made similar statements to those of Congressman Lucas, 95 Cong.Rec., p. 12,502 and p. 12,506.

10. 15 F.R. 7245, Oct. 28, 1950.

the general consuming public does not ordinarily have occasion to use. These establishments are not engaged in activities which are recognized as retail within the meaning of the exemption even though they may also sometimes sell goods or render services to the general consuming public while performing such function. Such activities as they perform are not recognized as retail as that term is traditionally and commonly understood. The concept of retail selling or servicing is alien to the types of activities performed by these establishments. The following examples will illustrate that type of activity.

\* \* \* \* \* \*

"(6) Advertising agencies provide industrial, commercial and financial organizations with specialized services which the general consuming public does not ordinarily have occasion to use. Such establishments have never been recognized as making sales of goods or services at retail." W. and H.Reg., 29 C.F.R. § 779.9 (Supp.1961).

The shopping service rendered by Sorvas has no more claim to recognition at retail than an advertising agency. But the Administrator went a step further in the 1950 regulations. In again promulgating a list of types of establishments the sales or service of which are not recognized as retail he included a classification directly fitting the service Sorvas renders, namely:

"Job efficiency checking and rating; establishments engaged in the business of dealing in." 29 C.F.R. § 779.10(b) (Supp.1961.)

These interpretative Rulings of the Administrator, while not of a conclusive nature are entitled to substantial weight. Those under present consideration are consistent with the Act and are based upon logical and rational reasoning.[11] Sorvas's "shopping service" is a specialized service which the general consuming public does not have occasion to use. It falls within the category of establishments which have never been recognized as making sales of services at retail.[12]

Sorvas urges here, as he successfully argued to the District Court, that the test of retail sale or service is met by the application of the standards found in Section 13(a) (2) with particular reference

11. In dealing with the question of the authoritative weight to be given the Interpretative Bulletins, the Supreme Court pointed out in Skidmore v. Swift & Co., 1944, 323 U.S. 134, 139–140, 65 S.Ct. 161, 164, 89 L.Ed. 124;

"There is no statutory provision as to what, if any, deference courts should pay to the Administrator's conclusions. \* \* This Court has long given considerable and in some cases decisive weight to Treasury Decisions and to interpretative regulations of the Treasury and of other bodies that were not of adversary origin.

"We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements,

and all those factors which give it power to persuade, if lacking power to control."

Davis, in his Administrative Law Treatise, comments on the above as follows:

"The words just quoted seem to be meticulously written, and they may be as reliable a guide (or partial guide) as can be found for determining the authoritative effect of what the court explicitly called 'interpretative regulations.' " Vol. 1, § 5.03, at pp. 301–302.

12. See Mitchell v. Kentucky Finance Co., 1958, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed. 2d 815; Durkin v. Joyce Agency, Inc., D.C.N.D.Ill.1953, 110 F.Supp. 918, affirmed sub nom. Mitchell v. Joyce Agency, Inc., 1955, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740; Fleming v. A. B. Kirschbaum Co., 3 Cir., 1941, 124 F.2d 567, affirmed sub nom. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Goldberg v. Roberts et al., 9 Cir., 1961, 291 F.2d 532.

to recognition in the industry. In accepting the argument the District Court relied on Boisseau v. Mitchell, 5 Cir., 1955, 218 F.2d 734, and Mitchell v. T. F. Taylor Fertilizing Co., D.C.M.D.Ga.1955, 136 F.Supp. 740, affirmed 5 Cir., 1956, 233 F.2d 284 saying:

> "These authorities hold to the view that as long as the purchaser is the ultimate consumer, not intending to resell, said sale in the industry is considered to be a retail sale, and the exemption is applicable." 182 F. Supp. 800, 802.

Both cases were also relied upon by the Court of Appeals in Kentucky Finance Company, Inc. v. Mitchell, 6 Cir., 1958, 254 F.2d 8 but on review the Supreme Court reversed. Mitchell v. Kentucky Finance Company, Inc., supra. Such a course skipped the primary hurdle of determining whether the nature of Sorvas's business made it eligible under the existing concept of retail service, a prerequisite to the application of the "industry recognition", and other standards for exemption set forth in Section 13(a) (2).

In Durkin v. Joyce Agency, D.C.N.D. Ill.1953, 110 F.Supp. 918, affirmed sub nom. Mitchell v. Joyce Agency, Inc., 1955, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740, the employees of the Joyce Agency, which was engaged in the business of furnishing watchmen, guards, detectives, fire inspection and shopping service, were held not to be exempt under the provisions of Section 13(a) (2) of the Act, since "[t]hey are not engaged in that type of 'service' to which the exemption refers, namely, a service 'performed by establishments which are traditionally recognized as local retail service establishments such as the restaurant, hotel, barber shop, repair shops, etc.' * * *." 110 F.Supp. 918, 924.

■ The specialized type of shopping service which Sorvas offers is not susceptible of classification as "retail." See Goldberg v. Roberts et al., 9 Cir., 1961, 291 F.2d 532.[13] Regardless of any business use to which the clients of Sorvas put his services, the very nature of his business was outside the retail concept. The 1949 amendment was inapplicable to him and the District Court erred in holding that he qualified for exemption under the Act.

■ Sorvas contends that at the trial the secretary agreed that there was only one issue to be decided—"whether the service rendered by appellee [Sorvas] was regarded in the industry as retail. If it were so considered, defendant [Sorvas] was exempt. If, however, it were considered wholesale, then the court would determine whether appellee [Sorvas] was engaged in interstate commerce. Accordingly, the case proceeded on the basis of determining whether appellee [Sorvas] fulfilled all the requirements set forth in Section 13(a) (2)."[14] Sor-

13. Reversing Mitchell v. Roberts, D.C.N.D. Cal.1959, 179 F.Supp. 247, relied upon by Sorvas and the District Court. The Court of Appeals of the Ninth Circuit, however, decided the Roberts case after the judgment was entered in the instant case.

14. Sorvas predicates this contention on the following colloquy between the District Judge and the Secretary's counsel, as follows:

"The Court: Doesn't this case—doesn't this whole case just boil itself down, Mr. Weiner, to whether or not based on what this gentleman has testified to and what the other facts in the case reflect, whether or not this service he operates or performs is regarded as retail in the industry? His facts can clearly establish that more than fifty percent of the annual dollar value comes from within Pennsylvania. You don't dispute that, do you?

"Mr. Weiner: No.

"The Court: And he has offered proof to show at least seventy-five percent of his dollar volume he sells to the person who requests the service and that person has no reason to resell it. You don't dispute that, do you?

"Mr. Weiner: No.

"The Court: So, the only question is, is this service regarded as retail in the industry. If it is, he is exempt. If it isn't then you have the other question.

"Mr. Weiner: If he is not a retail establishment——

"The Court: Then you have the other legal question as to whether or not the

vas charges that having had that issue decided against him the Secretary has now switched his position and presses an issue not presented to the District Court, namely, that "[r]egardless of industry recognition * * * where the non-exempt status of a business was determined by the Administrator before the 1949 amendment, such non-exempt status was not changed by the amendment and continues to be effective after the amendment."

Sorvas further submits that the Secretary, in proposing findings of fact and conclusions of law to the District Judge, made no "request for a determination of the status of appellee's [Sorvas's] business prior to the 1949 amendment or the legal implication thereof."

By so changing theories on appeal, Sorvas argues, the Secretary changed the factual issue in the case and failed to present testimony at the trial that his business was not exempt prior to 1949. He cited In re Linda Coal & Supply Company, 3 Cir., 1958, 255 F.2d 653; Chicago & Eastern Illinois Railroad Company v. Southern Railway Company, 7 Cir., 1959, 261 F.2d 394 and Ralph Knight, Inc. v. Mantel, 8 Cir., 1943, 135 F.2d 514 to support the proposition that once a party has adopted a theory he must abide by it.

The record does not indicate that counsel for the Secretary restricted himself at the trial from arguing the position he has submitted on the appeal.[15] Contrary to the assertion of Sorvas, we find that the Secretary's proposed conclusions of law fully embrace requests for a determination of the issues asserted by him on this appeal. Nor is there a lack of factual basis presented to the District Court upon which to consider the issues raised here. Indeed, once the nature of Sorvas's business as a shopping service was established the issue became one of law

as to whether he was within the scope of the Section 13(a) (2) exemption.

The cases cited by Sorvas are not apposite to this appeal because in the main they hold that a new theory may not be presented on appeal where the underlying facts have not been passed upon by the trial court as in In re Linda Coal and Supply Company, supra, and Ralph Knight, Inc. v. Mantel, supra, or requests for findings of facts and conclusions of law embracing such theory were not tendered to it as in Chicago & Eastern Illinois Railroad Company v. Southern Railway Company, supra. Neither situation is present here. Therefore, we cannot agree that the theory of this appeal as introduced by the Secretary is improper.

Finally, Sorvas argues that the Secretary's position in regard to the 1949 amendment is based upon a misinterpretation of three recent decisions of the United States Supreme Court: Mitchell v. Bekins Van & Storage Co., supra, Mitchell v. Kentucky Finance Co., supra, and Arnold v. Ben Kanowsky, Inc., supra. The Secretary does strain the relationship of Mitchell v. Bekins Van & Storage Co., to his argument, but the foregoing discussion demonstrates that his reliance upon Kentucky Finance and Kanowsky was not misplaced.

The judgment of the District Court refusing to grant a permanent injunction to enjoin Harry Sorvas, individually, and doing business as Merit Protective Service, from violating the minimum wage, overtime and record-keeping provisions of the Fair Labor Standards Act and dismissing the complaint of Arthur J. Goldberg, Secretary of Labor, will be reversed and the case remanded for entry of judgment in his favor in accordance with this opinion.

services that these employees render relates to interstate commerce to one degree or the other.

"Mr. Weiner: Exactly."

15. See footnote 14.