**TELEPHONE ANSWERING SERVICE, INC., Defendant, Appellant,**

v.

**Arthur J. GOLDBERG, Secretary of the United States Department of Labor, Plaintiff, Appellee.**

No. 5677.

United States Court of Appeals
First Circuit.

May 9, 1961.

Robert E. Schneider, Jr., San Juan, P. R., for appellant.

Bessie Margolin, Asst. Sol., Washington, D. C., with whom Harold C. Nystrom, Acting Sol., Robert E. Nagle, Atty., Washington, D. C., and Kenneth P. Montgomery, Regional Atty., United

States Department of Labor, San Juan, P. R., were on the brief, for appellee.

Before MARIS, HARTIGAN and ALDRICH, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Puerto Rico, entered upon the suit of the Secretary of Labor of the United States as plaintiff, enjoining the defendant, Telephone Answering Service, Inc., from violating section 15 (a) (2) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 215(a) (2). The following stipulated facts were found by the district court:

The defendant is engaged in a telephone answering service in Santurce, Puerto Rico. It employs five switchboard operators who answer telephone calls to its various subscribers during the times specified by each subscriber, take messages left by callers, give callers whatever information the subscriber has instructed be given and later report all calls and messages to the subscriber. This service is accomplished by means of extensions from the subscribers' telephones, which by arrangement with the Porto Rico Telephone Company are connected with the two switchboards operated by the defendant.

Among the defendant's 104 subscribers are three airlines, Delta, Caribbean Atlantic, and Iberia, each of which provides flights between Puerto Rico and overseas points. After the close of the airlines' normal work day, the defendant's switchboard operators answer all their calls giving information to individual inquirers and to travel bureaus on such matters as flight schedules, flight numbers, destinations of flights, times of departure and arrival and the number of seats available on the next day's flights. All information received by the operators is later reported to the airlines. The defendant's switchboard operators thus enable the three airlines to provide continuous telephone answering service to the public outside the normal work day.

The defendant's subscribers also include commission merchants, manufacturers' representatives, wholesalers, insurance companies and law and accounting firms. Its services for them include the receiving of overseas cables, which are read to the defendant's operators over the telephone by the cable companies, as well as calls from airlines, steamship and trucking companies regarding incoming and outgoing shipments of merchandise. The defendant's operators also receive overseas calls for its subscribers, and in the case of station-to-station calls the operators may talk with the exchange operator at the point of origin, although they do not communicate directly with the person originating the call.

In the representative month of August 1957, the defendant's operators answered a total of 14 calls originating from outside Puerto Rico, which number represented 0.32% of all calls answered by them during that month. Of the total of 4,437 calls answered during that month by the defendant's operators for its subscribers, 136 were calls to the airlines, 1,081 to commission merchants, manufacturers' representatives and wholesalers; 117 to insurance companies, agents and adjusters; 239 to certified public accountants and the remaining calls were to miscellaneous subscribers, including lawyers, doctors, dentists, government agencies, engineers and publicity agencies.

The defendant conceded that the wages paid its switchboard operators were less than those required under section 6 of the Act, 29 U.S.C.A. § 206, but contended that the operators do not come within the scope of the Act in that they are not engaged in commerce within the meaning of the Act. The defendant further contended that, even if its operators are held to be engaged in commerce its services nonetheless come within the exemption provided for a retail or service establishment under section 13(a) (2) of the Act, 29 U.S.C.A. § 213(a) (2).

After a trial the district court found that the defendant's switchboard operators are engaged in commerce within the meaning of the Act and that the retail or service establishment exemption does not apply to the defendant's business. Accordingly, a judgment was entered enjoining violation of the wage and hour provisions of the Act. 183 F. Supp. 607. This appeal followed.

On appeal the defendant contends that the district court erred in finding (1) that its switchboard operators are engaged in commerce within the meaning of the Act and (2) that its business is not a retail or service establishment within the exception provision.

■ We consider first whether the district court erred in its conclusion that the defendant's switchboard operators are employees engaged in commerce as that term is used in the Act.[1] The Supreme Court has on many occasions observed that in considering this question there are no exact lines drawn nor precise formulas for the courts to follow and that in determining whether an employee is engaged in commerce within the meaning of the Act the activities of the individual employee and not the business of the employer is the controlling factor.[2] Thus, in considering its scope in relation to a particular phase of industrial activity, the Act puts upon the courts the independent responsibility of applying the general terms of the statute to an infinite variety of complicated industrial situations.[3] The test in determining whether an employee is engaged in commerce is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated local activity.[4] An employee is entitled to the protection of the Act even though his duties are partly intrastate and, therefore, only partly interstate for Congress has made no distinction on the basis of volume of business.[5]

The defendant argues that in finding that its switchboard operators were engaged in commerce in answering the calls for the three airlines the district court was wrong because the duties of the operators did not include other services rendered by the airlines. The defendant conceded, however, that its switchboard operators enabled the airlines to provide continuous telephone answering service to the public outside the normal work day. The fact that these duties were limited does not change their character. Surely no one could question that telephone operators working directly for these airlines are engaged in commerce.[6] In this regard the defendant's operators perform a duty which is di-

---

1. The pertinent provisions of § 3 of the Fair Labor Standards Act are:
   "(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C.A. § 203(b).

2. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 571–572, 63 S.Ct. 332, 87 L.Ed. 460; Mitchell v. C. W. Vollmer & Co., 1955, 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196; Mitchell v. Lublin, McGaughy & Ass'n, 1959, 358 U.S. 207, 211–212, 79 S.Ct. 260, 3 L.Ed. 2d 243.

3. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 523, 62 S.Ct. 1116, 86 L.Ed. 1638.

4. Compare McLeod v. Threlkeld, 1943, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L. Ed. 1538; 10 East 40th St. Co. v. Callus, 1945, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806; Borden Co. v. Borella, 1945, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865; Mitchell v. C. W. Vollmer & Co., 1955, 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196; Mitchell v. H. B. Zachry Co., 1960, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753.

5. Mabee v. White Plains Pub. Co., 1946, 327 U.S. 178, 181, 66 S.Ct. 511, 90 L. Ed. 607.

6. Compare Airlines Transp. v. Tobin, 4 Cir., 1952, 198 F.2d 249.

rectly and vitally related to the functioning of these interstate carriers.

■ The defendant also urges that the district court erred in concluding that the work of the operators, in handling cables and overseas calls for commission merchants, manufacturers' representatives, wholesalers and insurance firms, was of such a character that it also was directly concerned in the practical operation of interstate commerce. We think that the court was right in so holding. It is settled that a telephone operator, in performing duties involving calls to steamship companies relating to goods ordered in the interstate business of the employer is engaged in commerce.[7] The few courts which have had occasion to deal with the classification of employees of telephone answering services have held that these employees are engaged in commerce within the purview of the Act.[8] The fact that the amount of work performed by the operators which was within the purview of the Act was small in relation to the total amount of their work does not mean that it may be disregarded as de minimis. For the operators performed in full in the regular course of business all the work of this nature which the defendant had undertaken to perform for its subscribers. The fact

that the services thus rendered formed only a small part of the defendant's total business is not determinative.[9] Nor is there substance to the defendant's argument that the operators' activities in taking the overseas calls and cables for subscribers other than the airlines are not in commerce because the operators do not answer the calls but merely relay them to the subscribers who themselves make the calls or answer the cables. We think that the situation is somewhat analogous to that of a warehouse in which the movement of goods in interstate commerce pauses when the goods are on their way to the recipients.[10] So here, while the delivery of the message is temporarily interrupted by the defendant's operator, her activity assures its ultimate delivery to the desired recipient. Thus commerce is directly facilitated.

We conclude that the district court did not err in finding the switchboard operators were engaged in commerce within the meaning of the Act.

We come, then, to the defendant's second contention, namely, that even if the Act does apply to its switchboard operators as employees engaged in commerce, nonetheless, section 13(a) (2) of the Act as amended,[11] 29 U.S.C.A. § 213(a) (2), which exempts certain retail

---

7. Durkin v. Joyce Agency, D.C.Ill.1953, 110 F.Supp. 918, 923, affirmed Mitchell v. Joyce Agency, 1955, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740; Sucrs. de A. Mayol & Co. v. Mitchell, 1 Cir., 1960, 280 F.2d 477, 481, certiorari denied 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195.

8. Schmidt v. Peoples Telephone Union of Maryville, Mo., 8 Cir., 1943, 138 F.2d 13; Tobin v. Lambert, D.C.Utah 1952, 22 Labor Cases par. 67, 129; Bloemer v. Ezell, D.C.Ky.1953, 112 F.Supp. 814; Mitchell v. Bearden, D.C.Tenn.1957, 32 Labor Cases par. 70, 538; Elsis v. Evans, 1958, 157 Cal.App.2d 399, 417, 321 P.2d 514, 526; Mahoney v. Mahoney, D.C.Tenn.1960, 186 F.Supp. 636, 637.

9. Mabee v. White Plains Pub. Co., 1946, 327 U.S. 178, 181, 66 S.Ct. 436, 99 L.Ed. 740; Skidmore v. John J. Casale, Inc., 2 Cir., 1947, 160 F.2d 527, certiorari denied 331 U.S. 812, 67 S.Ct. 1205, 91

L.Ed. 1832; Crook v. Bryant, 4 Cir., 1959, 265 F.2d 541.

10. Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 567–568, 63 S.Ct. 332, 87 L.Ed. 460; Sucrs. de A. Mayol & Co. v. Mitchell, 1 Cir., 1960, 280 F.2d 477, 480, certiorari denied 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195.

11. "Exemptions
"Sec. 13. (a) The provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A retail or service establishment shall mean an establishment 75 per centum of whose annual dollar volume of sale of goods or services (or of both) is not for resale and is rec-

or service establishments, is applicable to its business operations. Section 13 (a) (2), which is referred to by the Supreme Court in Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 391, 80 S.Ct. 453, 4 L.Ed.2d 393, as a "three-part definition" provides in effect that any employee employed by a "retail or service establishment" is to be exempt (1) if more than 50% of the establishment's annual dollar volume of sales of goods or services is made within the State, (2) if 75% of its annual volume of sale of goods or services is not for resale and (3) if 75% of its annual volume of sales of goods or services is recognized in the particular industry as retail sales or services. In the Arnold case the Supreme Court cautioned that:

> "We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit. The three conditions of § 13(a) (2) are explicit prerequisites to exemption, not merely suggested guidelines for judicial determination of the employer's status." 361 U.S. 388, 392, 80 S.Ct. 453, 456.

With respect to the type of service establishment contemplated by section 13(a) (2) it was said in Fleming v. A. B. Kirschbaum Co., 3 Cir., 1941, 124 F.2d 567, 572–573, affirmed Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638:

> " * * * it is fair to infer that the type of establishment meant is that which has the ordinary characteristics of a retail establishment except that it sells services instead of goods. In other words it is an establishment the principal activity of which is to furnish service to the consuming public. Typical retail

establishments are grocery stores, drug stores, hardware stores and clothing shops. In Wood v. Central Sand & Gravel Co., D.C.W.D. Tenn.1940, 33 F.Supp. 40, 47, the court suggested as illustrations of what Congress meant by service establishments 'barber shops, beauty parlors, shoe-shining parlors, clothes pressing clubs, laundries, automobile repair shops.' We think these illustrations apt."[12]

Considering this problem in a different factual situation this court in Aetna Finance Company v. Mitchell, 1 Cir., 1957, 247 F.2d 190, 192, stated that "in a broad sense, every business might be said to perform a 'service', yet * * no one would seriously urge that all types of businesses were eligible to be exempt as 'service establishments' under § 13(a) (2)." We reviewed the restrictive interpretation given section 13 (a) (2) by the Administrator of the Wage and Hour Division and his observation that "one should be cautious in attempting to stretch the exemptions of section 13(a) (2) so as to cover cases which were not patently intended to be included or which could have been designated easily and accurately in a specific exemption." The conclusions reached in the Aetna case were upheld by the Supreme Court in Mitchell v. Kentucky Finance Co., 1959, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815.

In the present case the district court found that the evidence, while not clear, tended to support the defendant's contentions in respect to the first two conditions and that finding is not controverted here. The court found, however, that the preponderance of the evidence did not support the defendant's contention that it also qualified under the third requirement, namely, industry recognition of its services as retail services. The defendant argues that the

ognized as retail sales or services in the particular industry; * * *." 29 U.S. C.A. § 213(a) (2).

12. The Kirschbaum case involved section 13(a) (2) as it stood before its amend-

ment by the Act of October 26, 1949, sec. 11, 63 Stat. 917. We think it is equally applicable to the meaning of "service establishment" in the section as amended, however.

district court erred in this regard because, as the defendant contends, it had established by a preponderance of uncontradicted expert testimony that it is recognized in the telephone answering industry as rendering a retail service, and that its classification by the municipality as a local business which is subject to municipal license tax, 21 L.P. R.A. § 622, is further evidence of its character.

To prove that its services are recognized as retail the defendant called three witnesses who testified that on the basis of their experience and opinion they would classify the defendant's service business as retail. The plaintiff called one witness who testified that, on the basis of his opinion and the use of the term "retail" in an industrial classification, telephone answering services are within the category of services traditionally considered to be lacking in any retail concept. As we have said, the district court found that the preponderance of this evidence did not support the defendant's contention. The court had the witnesses before it, observed their demeanor and evaluated their testimony. We cannot say that the conclusion to which it came was clearly erroneous. The case of Mahoney v. Mahoney, D.C. Tenn.1960, 186 F.Supp. 636, which was decided subsequently to the decision of the district court in the case before us, and which also involved a telephone answering service, is distinguishable on its facts. For in that case the only witness produced testified that a telephone answering service is recognized in the industry as being comparable to retail sales. Largely on the basis of that evidence the court felt compelled to conclude that the defendant's business was an exempt service establishment. The evidence in the present case does not compel that conclusion.

The defendant further contends that the classification by the municipality of its business as local for license tax purposes is persuasive evidence that it should be considered one of the class of establishments which renders a retail service. The district court took this fact into consideration but did not find it so. We agree with the district court. It is well settled that an enterprise is not free from federal regulation simply because it may be subject to taxation by a State or its subdivisions.[13] But a classification made by a State or its subdivisions for such purposes is not binding upon Congress and, indeed, in this instance cannot affect the classification which that body has itself made for wholly different purposes.

We are satisfied that the court did not err in holding that the defendant's business is not entitled to exemption from the Act as a service establishment.

The judgment of the district court will be affirmed.

13. Kirschbaum v. Walling, 1942, 316 U.S. 517, 521, 62 S.Ct. 1116, 86 L.Ed. 1638; Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 132, 63 S.Ct. 494, 87 L.Ed. 656.