W. Willard **WIRTZ**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**OFFICE COMMUNICATIONS COMPANY and Moyer Pinkston Hendrix, Defendants.**

No. C–34–WS–64.

United States District Court
M. D. North Carolina,
Winston-Salem Division.

Aug. 30, 1965.

Charles Donahue, Sol., Beverley R. Worrell, Reg. Atty., Isabelle R. Cappello, and Joe D. Sparks, Atty., U. S. Dept. of Labor, for the plaintiff.

Roy L. Deal and John M. Minor, of Deal, Hutchins & Minor, Winston-Salem, N. C., for defendants.

EUGENE A. GORDON, District Judge.

This action was brought by the plaintiff, W. Willard Wirtz, Secretary of Labor, to enjoin the defendants, Office Communications Company and Moyer Pinkston Hendrix, from future violations of the overtime compensation and record-keeping provisions of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 201 et seq., hereinafter referred to as the Act, and to restrain the withholding of overtime compensation alleged to be withheld unlawfully from employees of the defendants.

The case was heard by the Court without a jury. At the end of the defendants' evidence, the plaintiff moved to strike the defenses of the defendants under Rule 12(f) of the Federal Rules of Civil Procedure. The Court denied the motion. At the end of all the evidence, the plaintiff renewed his motion to strike the defenses of the defendants, and the defendants renewed their motion to dismiss. The Court reserved the right to rule on the motions after the submission of proposed Findings of Fact and Conclusions of Law by the parties.

Having now carefully considered all of counsels' proposals, arguments and contentions, as well as the testimony, pleadings, stipulations, briefs and exhibits submitted, and the reasonable inferences to be drawn therefrom, the Court, pursuant to Rule 52 of the Federal Rules of

Civil Procedure, makes its Findings of Fact and Conclusions of Law as follows:

*Findings of Fact*

1. The plaintiff, the Secretary of Labor, United States Department of Labor, brings this action pursuant to the authority conferred upon him by the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq. The corporate defendant, Office Communications Company, is a corporation organized and existing under and by virtue of the laws of the State of North Carolina, having its principal place of business in Winston-Salem, North Carolina, where it has been engaged in the operation of a telephone answering service. The individual defendant, Moyer Pinkston Hendrix, is a citizen and resident of the State of North Carolina, and as president of the corporate defendant actively manages, supervises and directs the business of Office Communications Company.

2. The defendants have operated, and still operate, a private board telephone exchange with approximately 200 jacks, approximately 180 of which jacks are utilized in the answering of telephones of its customers. The private board exchanges operated by the defendants are, through a system of relays, wires, switches, various electronic devices, tied in with telephones in all of the states of the United States, and some foreign countries, and thereby are a part of a nationwide and worldwide telephone system. Defendants' business is in interstate commerce and the employees are regularly engaged in interstate commerce.

3. The corporate defendant operates its private board exchanges twenty-four hours a day, seven days a week and employees of the corporate defendant are on duty at all times. The work schedule of the operators is based on a forty hour workweek; however, at various times the employees worked in excess of the forty hour schedule. During the period involved, the corporate defendant had 165 to 180 customers, who are located entirely in the Winston-Salem area and consist primarily of doctors, lawyers, realtors, railroad companies, insurance firms, and producers of goods for interstate commerce. The service is paid for at a basic rate of $18.00 per month, which amount covers 85 completed messages, the calls in excess of 85 are billed at the rate of ten cents (10¢) per call. The service rendered consists primarily of receiving messages for the customer when he does not answer his own phone; making a physical note of the message received; and later transmitting it to the individual customer. The equipment used by the corporate defendant is leased from Southern Bell Telephone and Telegraph Company.

4. Defendants' employees were paid an established and stated salary for the forty hour scheduled workweek. The employees involved in this action were paid salaries for a forty hour workweek as follows:

| EMPLOYEE | DATES EMPLOYED | SALARY FOR 40-HOUR WEEK |
|---|---|---|
| Maggie J. Bowen | 4/2/62–12/17/62 | $60.00 |
| | 1/21/63–3/15/63 | $62.50 |
| Cleo M. Gerry | 8/27/62–12/10/62 | $47.50 |
| | 12/10/62–6/24/63 | $50.00 |
| Freddie C. Meadows | 4/2/62–8/27/62 | $62.50 |
| | 8/27/62–5/6/63 | $67.50 |
| | 5/7/63–9/9/63 | $75.00 |
| Loretta L. Pruitt | 4/30/62–12/17/62 | $55.00 |
| | 3/4/63–6/30/63 | $57.50 |
| | 7/1/63–9/2/63 | $60.00 |
| Wanda C. Warren | 4/2/62–9/17/62 | $50.00 |
| | 1/21/63–1/28/63 | $52.00 |

For their work in excess of forty hours in a workweek, the employees were paid by separate check, and they were compensated for the overtime hours at their regular rate of pay, which was determined by dividing their salary by forty, the number of hours which the regular salary was intended to compensate. The employees were not compensated for hours worked in excess of the scheduled workweek at one and one-half times their regular pay, and deductions for Social Security and withholding taxes were not made from the separate checks given in payment for the overtime hours worked. Some of the employees also performed work during the hours worked in excess of the scheduled workweek for the individual defendant in his business as a Certified Public Accountant. This work was usually performed while the employees were sitting at the switchboard and taking phone calls and messages for the corporate defendant. The Court finds that during the hours worked in excess of the scheduled forty hour workweek, even though some of the employees during such hours performed work for the individual defendant as a Certified Public Accountant, they were still primarily employed by and engaged in the business of the corporate defendant.

5. The defendants did not retain or produce at the trial records of the overtime hours worked each day and each workweek by the employees for the corporate defendant. Evidence was introduced, however, showing the amount of the separate checks which the defendants' employees received for hours worked in excess of forty. The total of such separate checks received by employees, less amounts shown to have been received for purposes other than hours worked in excess of forty hours per week, are as follows:

| | | |
|---|---|---|
| a. | Maggie J. Bowen | $199.80 |
| b. | Cleo M. Gerry | 25.40 |
| c. | Freddie C. Meadows | 805.21 |
| d. | Loretta L. Pruitt | 435.15 |
| e. | Wanda C. Warren | 38.95 |

The Court finds that the defendants failed to keep and maintain adequate records as required by the Fair Labor Standards Act.

6. The defendants have unlawfully withheld from the employees listed in Paragraph 4 as overtime compensation the amount of $752.27.

7. In 1960, the Wage and Hour Division of the Department of Labor investigated the conduct of the defendants' business, and as a result of this investigation, the Secretary of Labor instituted a suit for an injunction to restrain the defendants from violating the Act. On August 28, 1961, the suit was concluded when the Secretary of Labor through his representatives and the defendants entered into a stipulation in which the defendants agreed to conform to the Act as to wages, overtime compensation, and recordkeeping requirements. The Court finds that the defendants have continued to violate the Act in regard to overtime compensation and recordkeeping requirements.

*Discussion*

In the determination of the matters presented herein, the Court makes reference to the provisions of Section 7(a) (1) of the Act, 29 U.S.C.A. § 207(a) (1), which provides that no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for any workweek longer than forty hours, unless such employee receives compensation for his employment in excess of forty at a rate of not less than one and one-half times the regular rate at which he is employed.

In a case of this nature, the burden of proof is on the plaintiff to show by the preponderance of the evidence that the employees of the defendants were engaged in interstate commerce. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, reh. den. 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946); Mitchell v. Telephone Answering Service, Inc., 183 F.Supp. 607 (D.P.R. 1959); aff. sub nomine Telephone Answering Service v. Goldberg, 1 Cir., 290 F.2d 529 (1961). However, in the pres-

ent case, the parties have stipulated that the defendants and their employees were engaged in interstate commerce. The plaintiff also has the burden of showing that the defendants' employees performed work for which they were improperly compensated. Anderson v. Mt. Clemens, supra. Herein, it was established by evidence of the plaintiff that the employees of the defendants were on a forty hour per week schedule at a set rate of compensation; that the employees worked in excess of forty hours and were compensated for the excess hours at the regular rate for a forty hour workweek and by separate check. It appears that some of the employees performed work for the individual defendant in his business as a Certified Public Accountant, but, as found by the Court, this work was performed when the employees were sitting at the switchboard taking calls and messages and were, therefore, primarily employed by and engaged in the business of the corporate defendant.

■ The plaintiff having sustained his burden of proof, it is then for the defendants to show that they are exempt from the provisions of the Act. Mitchell v. Kentucky Finance Company, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). Section 13(a)(2) of the Act, 29 U.S.C.A. § 213(a)(2) provides that the minimum wage and maximum hours provisions of the Act do not apply to any employee employed by a retail or service establishment (1) more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located; (2) 75 per centum of whose annual dollar volume of sales of goods and services is not for resale; and (3) such sales are recognized as retail sales or services in the particular industry.

■ It is well established that exemptions from the coverage of the Act are to be narrowly construed against the employers seeking to assert them and that, *in order to qualify, establishments must be plainly and unmistakably within the terms and spirit of the exemptions.* Ar-

nold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); Mitchell v. Kentucky Finance Co., supra. The defendants contend that they qualify and fall within the exemptions listed in Section 13(a)(2) of the Act, 29 U.S.C.A. § 213(a)(2).

In asserting the exemption for a "retail or service establishment," the three-test criteria does not become relevant until it is shown that the establishment is one which fits into the concept of "retail" in the first place. Mitchell v. Kentucky Finance, supra; Willmark Service System, Inc., v. Wirtz, 8 Cir., 317 F.2d 486 (1963); cert. den. 375 U.S. 897, 84 S.Ct. 170, 11 L.Ed.2d 125; Goldberg v. Sorvas, 3 Cir., 294 F.2d 841 (1961); Goldberg v. Roberts, 9 Cir., 291 F.2d 532 (1961); Wirtz v. Idaho Metal Works, Inc., 9 Cir., 335 F.2d 952 (1964), cert. gran. 380 U.S. 905, 85 S.Ct. 894, 13 L.Ed.2d 793. For reasons hereinafter set forth, it is upon this premise that the Court concludes that the defendants are not exempt from the provisions of the Act.

■ In Mitchell v. Kentucky Finance, supra, the Supreme Court of the United States held that a small loan company was subject to the terms of the Act, even though the Court found that, except for the business not being within the traditional retail concept, it met otherwise all the requirements for the exemption. It further pointed out that the 1949 amendments to the Act were meant to do away with the "business use" test, which test had been established by the Administrator of the Wage and Hour Division of the Department of Labor to disqualify as retail all sales made to other than individual consumers in deciding whether a particular business was a retail or service establishment. Congress substituted a more flexible test, under which selling transactions would qualify as retail if they did not involve resale and were recognized in the particular industry as retail. However, the Supreme Court noted that abolition of the "business use" test did not abrogate the requirement that the exemption was still to apply only to business establishments

"otherwise eligible under existing concepts." In conclusion on this point, the Court stated, 359 U.S. 290, 295, 79 S.Ct. 756, 759:

"Any residual doubt on this score is dispelled by the explicit and repeated statements of the sponsors of the amendatory legislation and in the House and Senate Reports to the effect that 'The amendment does not exempt banks, insurance companies, building and loan associations, *credit companies,* (the emphasis supplied by the Court) newspapers, *telephone companies,* gas and electric utility companies, telegraph companies, etc., because there is no concept of retail selling or servicing in these industries. Where it was intended that such businesses have an exemption one was specifically provided by the law * * *.'" (Emphasis added except as noted)

Further, in Mitchell v. Kentucky Finance Co., supra, the Court stated that "[w]hen Congress amended the Act in 1949 it provided that pre-1949 rulings and interpretations by the Administrator should remain in effect unless inconsistent with the statute as amended." The interpretations and rulings prior to 1949 considered financial institutions ineligible for qualification for the exemption as they were not within the retail concept, and the Supreme Court accordingly so found. The pre-1949 rulings and interpretations of the Administrator make no reference to telephone answering services, but reference is made to business and services engaged in and offered by some telephone answering services. In Interpretative Bulletin No. 6, 1942 WH Manual 326, p. 29, it is stated that telephone companies; duplicating, addressing, mailing and mailing-list establishments; companies engaged in supplying watchmen, guards and detectives for industry are not to be considered retail or service establishments within the meaning of Section 13 (a) (2) of the Act. The similarity between telephone companies and telephone answering services goes without saying as both are, through a system of relays,

wires, switches, various electronic devices, tied in with telephones in all states of the United States, and many foreign countries, and are a part of a nationwide and worldwide telephone system. The defendants, in the subject case as stated previously, leased their equipment from a telephone company. In regard to supplying watchmen and detectives for industry, it has been held that a firm providing such a service to a merchandising chain was not engaged in the type of service to which the exemption refers, namely a service performed by establishments which are traditionally recognized as local retail service establishments such as the restaurant, hotel, barber shop, repair shops, etc. Durkin v. Joyce Agency, 110 F. Supp. 918 (N.D.Ill.1953), aff. per curiam, sub nomine Mitchell v. Joyce Agency, Inc., 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740. The defendants herein provided an analogous service; that is, an automatic alarm system for a merchandising store. As to a mail addressing establishment, in Goldberg v. Roberts, supra, a service enterprise which engaged in addressing, stuffing and mailing of letters for various establishments was held to be outside the retail concept. Witnesses for the defendants testified that some answering services provide such a service. Considering these rulings and interpretations, the Court can only conclude that prior to 1949 the Administrator would have held that the telephone answering service was not within the retail concept. However, the Court need not speculate because the Administrator has now specifically found telephone answering services outside the retail concept. 29 C.F.R. 799.317. While the rulings of the Administrator are not binding upon the Court, it is held that the rulings are entitled to substantial weight. Goldberg v. Sorvas, supra.

In the determination of whether Office Communications Company is within the retail concept, characteristics of a retail business become relevant. Two such characteristics are the selling of goods or services to satisfy the needs of the general community and the performance of a function in the business organi-

zation of the nation which is at the very end of the stream of distribution. Wirtz v. Modern Trashmoval, Inc., 4 Cir., 323 F.2d 451 (1963); Wirtz v. English, 245 F.Supp. 628 (D.C.Kan. 1965). There can be little doubt that the service provided by the corporate defendant is not one used by the general community. There was testimony that indicated that one housewife used an answering service, but this was unusual. The Court is of the opinion that the corporate defendant satisfied the everyday needs of only the business, commercial, professional and industrial community. Also, the service provided by the corporate defendant is in the midst of commerce, not at the end of the stream of distribution. Messages received for and relayed to customers of the type which used the service provided by the corporate defendant would tend to induce further commerce as between the customers and other persons, not end it.

In Mitchell v. Telephone Answering Service, supra, the District Court found, affirmed by the Circuit Court, that a telephone answering service located in Puerto Rico was not exempt under the Act. The District Court was primarily concerned with the questions of whether the answering service's switchboard operators were engaged in commerce as that term is used in the Act, and whether the industry recognized that the sale of such services were retail. The District Court found that the switchboard operators were engaged in commerce, and the sale of the service was not recognized in the industry as retail. However, as to the retail concept of the telephone answering service, the District Court stated at 183 F.Supp. 607, 619:

> "The court has also to recognize that by its very nature an enterprise of the type of that operated by the defendant is not a retail establishment—and that is what the defendant's witnesses, including its manager and operator, seem to have tried to make of it."

The Circuit Court in affirming the District Court made comment on the retail concept of the answering service at 290 F.2d 529, 533, by saying:

> "With respect to the type of service establishment contemplated by section 13(a) (2) it was said in Fleming v. A. B. Kirschbaum Co., 3 Cir., 1941, 124 F.2d 567, 572–573, affirmed Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638:
>
> > '* * * it is fair to infer that the type of establishment meant is that which has the ordinary characteristics of a retail establishment except that it sells services instead of goods. In other words it is an establishment the principal activity of which is to furnish service to the consuming public. Typical retail establishments are grocery stores, drug stores, hardware stores and clothing shops. In Wood v. Central Sand & Gravel Co., D.C.W.D. Tenn. 1940, 33 F.Supp. 40, 47, the court suggested as illustrations of what Congress meant by service establishments "barber shops, beauty parlors, shoe-shining parlors, clothes pressing clubs, laundries, automobile repair shops." We think these illustrations apt.'

> "Considering this problem in a different factual situation this court in Aetna Finance Company v. Mitchell, 1 Cir., 1957, 247 F.2d 190, 192, stated that 'in a broad sense, every business might be said to perform a "service", yet * * * no one would seriously urge that all types of businesses were eligible to be exempt as "service establishments" under § 13(a) (2).' We reviewed the restrictive interpretation given section 13(a) (2) by the Administrator of the Wage and Hour Division and his observation that 'one should be cautious in attempting to stretch the exemptions of section 13(a) (2) so as to cover cases which were not patently intended to be included or which could have been designated easily and accurately in a specific

exemption.' The conclusions reached in the Aetna case were upheld by the Supreme Court in Mitchell v. Kentucky Finance Co. * * *."

Although the courts in the above cited opinions based their decisions on the premises that the employees of the answering service were engaged in commerce and there was no recognition in the industry that the sale of services were retail, it is apparent that they felt that the telephone answering service was not within the retail concept.

In Bloemer v. Ezell, 112 F.Supp. 814, 816 (W.D.Ky. 1953) the court concluded that a telephone answering service was not within the retail concept by saying:

"The exemption from the coverage of the Act defined in section 213(a) (2) is inapplicable to the business operations of the defendants, inasmuch as their business is neither a 'service establishment', as contemplated by the section, nor a 'retail establishment' as contemplated by the foregoing section of the Fair Labor Standards Act, * * *."

The defendants herein rely on the decision of Mahoney v. Mahoney, 186 F.Supp. 636 (E.D.Tenn. 1960) for authority that their business falls within the exemption. However, as noted in Telephone Answering Service, Inc., v. Goldberg, supra, 290 F.2d 532, in the Mahoney case the only witness produced as to recognition within the industry testified that a telephone answering service is recognized in the industry as being comparable to retail sales, and largely on this uncontradicted evidence, the court was compelled to conclude that the telephone answering service was an exempt business establishment. The Court is of the opinion that the Mahoney case is not to be relied upon due to the fact that the court apparently failed to first consider whether the telephone answering service was within the retail concept and eligible to qualify for the exemption, as is required. Mitchell v. Kentucky Finance, supra; Willmark Service System, Inc., v. Wirtz, supra; Goldberg v. Sorvas, supra; Gold-berg v. Roberts, supra; and Wirtz v. Idaho Metal Works, Inc., supra.

In Wirtz v. Modern Trashmoval, Inc., supra, 323 F.2d 465, Judge Boreman provided a standard to be applied in the determination of the matter herein as follows:

"In determining whether or not a business activity is a 'retail or service establishment' within the meaning of section 13(a) (2) exemption, we think the most satisfactory approach is to examine the facts of the record as to the nature and conduct of its business in the light of general criteria developed under the Act since its enactment in 1938."

In examination of the nature and conduct of the business of Office Communications Company and the study of the decisions, the Court concludes that it lacks the traditional retail concept which Congress intended for a business establishment to have in order to be exempt under Section 13(a) (2) of the Act.

The Court finds that the defendants did not keep adequate records in that it failed to show the amount of overtime worked by employees each day and each week. However, the amount of overtime compensation due to each employee can be accurately computed. The evidence established the fact that each employee who worked in excess of forty hours in any workweek was paid by separate check. The amount of the separate check was arrived at by dividing the total amount received for the scheduled workweek of forty hours by forty to arrive at the rate per hour, and the rate per hour thus arrived at was paid for all hours worked in excess of forty hours. Therefore, the Court can determine the amount of the additional overtime compensation due each of the employees by finding the sums of all separate checks, except those shown to be for purposes other than overtime work, and taking one-half the amount. The one-half thus determined represents the additional one-half the

regular rate which the employees were entitled to receive under Section 7 of the Act, 29 U.S.C.A. § 207. Such amounts are as follows:

1. Maggie Bowen
 $199.80—Total of separate checks, less checks for other purposes.
 $99.90—Additional half-time the regular rate due the employee.

2. Cleo M. Gerry
 $25.40—Total of separate checks
 $12.70—Additional half-time the regular rate, due the employee.

3. Freddie C. Meadows
 $805.21—Total of separate checks
 $402.61—Additional half-time the regular rate, due the employee.

4. Loretta L. Pruitt
 $435.15—Total of separate checks
 $217.58—Additional half-time the regular rate, due the employee.

5. Wanda C. Warren
 $38.95—Total of separate checks
 $19.48—Additional half-time the regular rate, due the employee.

---

The total amount withheld and due to the above employees is $752.27.

■ The defendants contend that several of the employees performed work for the individual defendant as a Certified Public Accountant during the overtime period. However, the evidence tended to show that these employees performed this work while sitting at the corporate defendant's switchboard, and the Court finds that they were primarily employed by the corporate defendant while performing the work for the individual defendant. In such instances, the employees are still entitled to recover overtime compensation as required by the Act. Guess v. Montague, 4 Cir., 140 F.2d 500 (1943); Tobin v. Blue Channel Corp., 4 Cir., 198 F.2d 245 (1952).

■ The defendants cannot complain that the plaintiff did not present documentary proof of the exact hours of overtime worked by the defendants' employees. When the employer has failed to keep adequate records, upon a showing by the employee that he has performed work for which he has not been properly compensated, it is then upon the employer to come forward with the precise amount of work performed. In Anderson v. Mt.

Clemens Pottery Co., 328 U.S. 680, 687, 688, 66 S.Ct. 1187, 1192, the Supreme Court announced the rule in this regard as follows:

"When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient

**1004**

evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

 As a result of an investigation by the Wage and Hour Division of the Department of Labor in 1960, an injunction was sought to restrain the defendants herein from violating the overtime compensation and recordkeeping provisions of the Act. On August 28, 1961, the Secretary of Labor, through his representatives, and the defendants entered into a stipulation wherein it was agreed that the defendants would abide by the mandates of the Act. However, the Court finds and concludes that the defendants have continued to violate the provisions of the Act in regard to record keeping and overtime compensation, therefore, an injunction is proper to restrain further violations. It is held that in such a situation where an employer has been advised of violations and he agrees to refrain from such violations, but he continues to carry on his business contrary to the provisions of the Act, an injunction is a proper remedy. Gatlin v. Mitchell, 5 Cir., 287 F.2d 76, cert. den. 366 U.S. 963, 81 S.Ct. 1925, 6 L.Ed.2d 1255 (1961). The Court is also empowered to restrain an employer from withholding overtime compensation when found to be due to employees. Section 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 217.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this action. 28 U.S.C.A. § 1337; 29 U.S.C.A. § 217.

2. Defendants, Office Communications Company, and Moyer Pinkston Hendrix, its President, at all times pertinent hereto have been employers, within the meaning of the Act, of the employees named in Paragraph Five of the Conclusions of Law.

3. The employees of the defendants were, and are, engaged in interstate commerce during the periods relevant to this suit.

4. The defendants, Office Communications Company and Moyer Pinkston Hendrix, have violated Sections 7 and 15(a) (2) of the Fair Labor Standards Act, 29 U.S.C.A. § 207 and § 215(a) (2), by employing their employees in commerce for workweeks longer than forty hours without compensating the employees one and one-half times the regular rate of compensation for all hours worked in excess of forty hours.

5. As a result of violations of Section 7 of the Fair Labor Standards Act, 29 U.S.C.A. § 207, the defendants have unlawfully withheld a total of $752.27 in overtime compensation from their employees as follows:

| | |
|---|---|
| Maggie J. Bowen | $ 99.90 |
| Cleo M. Gerry | $ 12.70 |
| Freddie C. Meadows | $402.61 |
| Loretta L. Pruitt | $217.58 |
| Wanda C. Warren | $ 19.48 |

6. The plaintiff is entitled to an injunction enjoining the defendants, Office Communications Company and Moyer Pinkston Hendrix, from violating Sections 7, 15(a) (2), 11(c) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 207, § 215(a) (2), § 211(c) and § 215(a) (5), and restraining the defendants from continued withholding of wages herein found due their employees as listed in Paragraph Five of the Conclusions of Law.

7. The motion of the defendants to dismiss, and the motion of the plaintiff to strike the defenses of the defendants made pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, 28 U.S.C.A., are denied.

Counsel for the plaintiff shall, within ten days of the date hereof, prepare and submit to the Court a judgment in accordance with these findings of fact and conclusions of law. The judgment shall provide that the costs of the action be taxed against the defendants, and prior to submission of the judgment to the Court for approval, it shall be submitted to counsel for the defendants for approval as to form.