**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**George FERRIS, individually and doing business as Carnegie Equipment Company of Johnstown, Defendant.**

**Civ. A. No. 65–587.**

United States District Court
W. D. Pennsylvania.

Aug. 26, 1966.

---

Gustave Diamond, U. S. Atty., Pittsburgh, Pa., and Benjamin G. Usher, Attorney, United States Department of Labor, Chambersburg, Pa., for plaintiff.

James C. Evans, of Evans, Ivory & Evans, Pittsburgh, Pa., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF COURT

MARSH, District Judge.

Plaintiff brought this action pursuant to 29 U.S.C.A. § 217 to enjoin the defendant from violating the provisions of §§ 215(a) (2), 215(a) (5), 206, 207 and 211(c), 29 U.S.C.A., of the Fair Labor Standards Act, as amended.

It is alleged that the defendant employed two employees in the receipt, handling, unloading and stocking of goods which were received from out-of-state suppliers on a regular and recurring basis, and that said employees were engaged in activities which placed them in interstate commerce within the meaning of the Act; that the defendant from August 18, 1962 paid his employees wages at rates of pay less than the applicable minimum statutory rate; that he failed to compensate his employees for overtime at rates not less than one and one-half times the regular rate at which they were employed; that he failed to comply with the record-keeping provisions of the Act and the regulations of the Administrator of the Wage and Hour Division, United States Department of Labor.

In addition to denials of the alleged violations, the defendant affirmatively averred that his business is a retail establishment and that his employees are exempt from the provisions of the Act. 29 U.S.C.A. § 213(a) (2).[1] In addition, he avers that the two employees involved, namely, Victor Sidola and Josephine McLoota, were employed by defendant as managers, and as such would not be within the application of the Act. 29 U.S. C.A. § 213(a) (1). At pretrial the court ruled that this latter defense was not available to defendant in view of the salaries admittedly paid to his employees (Transcript of pretrial conference, pp. 3–4); this defense is not being pressed.

It was stipulated:

(1) That the statute of limitations contained in the Portal-to-Portal Act of 1947, as noted in 29 U.S.C.A. § 217, would preclude recovery of all underpayments accruing more than two years prior to the filing of the complaint on June 2, 1965. (Pretrial Stipulation, § I.)

(2) That the aforesaid employees of the defendant, since August 18, 1962, have engaged in interstate commerce within the meaning of the Act, and are therefore entitled to the benefits of coverage under the Act if defendant is not exempt from its provisions under § 213 (a) (2). (T., p. 3.)

(3) That during the period in question, not more than 10% of the defendant's annual dollar volume of sales were "sales for resale" within the meaning of § 213(a) (2). (T., p. 4.)

(4) That over 50% of defendant's annual dollar volume of sales were made in Pennsylvania. (Pretrial Stipulation, § III.)

The remaining issue for decision is whether 75% of defendant's annual dollar volume of sales are recognized as retail in the industry.

We think that the defendant failed to prove that 75% of the annual dollar volume of his sales are recognized as retail

1. The Act, inter alia, provides:
   "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to—
   "(1) * * *
   "(2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, if such establishment—
   "* * *
   "A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry * * *."

in the industry; in addition, it is the opinion of the court that his establishment is not within the retail concept.

The court makes the following:

## FINDINGS OF FACT

1. The defendant is a resident of Altoona, Blair County, Pennsylvania. He owned and has conducted a sole proprietorship business, known as Carnegie Equipment Company of Johnstown, in the city of Johnstown, Cambria County, Pennsylvania, since 1938. His store was and is located at 605 Main Street.

2. The business operated out of an area on the first floor of a building which would be classed as a selling room or a display room; a stockroom was located in the basement. In the display room which is accessible from the street through three separate ways there is displayed on tables or display counters the items offered for sale. There are no partitions. It is one large room approximately 40 feet by 200 or 300 feet in length. Signs in the windows of the selling room stated: "We sell retail". The defendant has a retail mercantile license issued by the City of Johnstown. The store was open six days a week from 9:00 a. m. to 5:00 p. m., Monday through Saturday, prior to January, 1965. The business serves Johnstown and the surrounding area within a distance of 18 or 20 miles.[2] The gross income for the Johnstown business was over $36,000 in 1963 and 1964, and in 1965 was over $50,000. The defendant had competitors operating stores in the vicinity.

3. The defendant engaged in the sale of supplies and equipment to restaurants, hotels, taverns, soda fountains, bars, fraternal organizations, churches, social organizations, local governments and individuals. Defendant sold supplies at his store, such as flatware, dishes, glasses, pots and pans, mops and brooms, waxes, tables, chairs, paper cups, napkins, towels, etc.; and equipment customarily used by restaurants, hotels, bars and taverns, such as ranges, barbecue machines, milk-shake machines, dishwashers and dryers, exhaust fans, coolers, three-compartment sinks, large coffee urns and carriers, roasters, steam tables, floor machines, potato peelers, commercial refrigeration units, etc. (See Exhibit "B" contained in Answer to Interrogatories; plaintiff's Ex. 10.)

4. Generally and primarily the defendant's stock of goods were supplies and equipment intended to be sold to hotels, restaurants, taverns, etc., but some of the supplies were used by private individual consumers who came in off the street and made small-quantity purchases at retail prices at the store.

Some of the defendant's business customers made small-quantity purchases at retail prices at the store.

The small-quantity purchases made by individual private consumers and by defendant's business customers at retail prices were not shown to be 75% of his annual dollar volume of sales.

"The majority of defendant's sales were made to various restaurants, hotels, bars, taverns, fraternal organizations, social organizations, and customers of similar nature, and to Cambria County and Bethlehem Steel Company, rather than to individuals." (Pretrial Stipulation, § III.)

Some sales were made to local governments pursuant to bids.

The majority of the annual dollar volume of sales made by defendant's establishment during the period under consideration was wholesale or non-retail.

5. The defendant employed Josephine McLoota in interstate commerce from August 18, 1962 to January 1, 1965 at a salary of $30.00 per week. The defendant employed Victor Sidola in interstate commerce from August 18, 1962 to January 1, 1965, at a salary of $40.00 per week. These salaries were intended to compensate the two employees for all hours worked in a work week, whether

2. According to the latest census, Johnstown has a population of over 53,000 and Cambria County has a population of over 200,000.

more or less than 40, and constituted the total weekly salary or remuneration for employment duties rendered to defendant by these employees in the opera tion of his establishment. (Pretrial Stipulation, § III:)

6. Josephine McLoota was employed from June 7, 1963 to July 26, 1963 for workweeks of 35 hours; during the holiday week of July 5th, she worked 28 hours; from August 2, 1963 to January 1, 1965, she was employed for workweeks of 42 hours; for 11 holiday weeks in the period from September 6, 1963 to January 1, 1965, she worked 35 hours per week. The total back wages due Josephine McLoota amounts to $1,676.20.

Victor Sidola was employed from August 2, 1963 to January 1, 1965, for workweeks of 39 hours; for 11 holiday weeks in the period from September 6, 1963 to January 1, 1965 he worked 32½ hours per week. The total back wages due Victor Sidola amounts to $529.93.

7. Defendant failed to keep accurate and adequate records of hours worked by his employees, wages paid to and employment activities of his employees, and other employment records required by the Act and the regulations promulgated thereunder.

8. Defendant owned a similar establishment at Altoona, Pennsylvania. Prior to the inception of this action, his employment practices in Altoona and Johnstown were investigated by representatives of the plaintiff. On these occasions the defendant was fully apprised of his duties and obligations under the Act.

## DISCUSSION

■ Upon consideration of the testimony, exhibits and the objective circumstances, it is the court's opinion that the preponderance of the credible evidence demonstrates that the defendant's establishment by its nature belongs in that category to which the retail concept does not apply. Thus it is not to be considered as a retail establishment within the meaning of the Fair Labor Standards Act. The category referred to consists of stores like defendant's whose principal purpose is to furnish supplies and equipment for other businesses, such as establishments engaged in the business of dealing in store equipment, butchers' equipment, jewelers' equipment, pharmacists' supplies, plumbers' equipment, etc. (See plaintiff's Ex. 11, pp. 48–49.) The supplies and equipment displayed for sale at defendant's store were not intended primarily for the general buying public but were intended for use by restaurants, hotels, taverns, bars, clubs, etc. located in the area surrounding Johnstown, Pennsylvania. The majority of defendant's sales were in fact made to these businesses. Traditionally his establishment is not within the retail concept.[3]

The defendant attempts to analogize his establishment to a stationery store which the Administrator has placed in the category of establishments whose sales may be recognized as retail, provided the three percentage tests are met. (Plaintiff's Ex. 11, pp. 50, 69–70.) However, it seems that a closer analogy would be an establishment, if such there be, which is engaged in the business of furnishing supplies and equipment to retail stationery stores. Such an establishment would likely be placed in the category of those lacking the retail concept. (Plaintiff's Ex. 11, pp. 48, 49.)

■ The evidence discloses that to some extent retail sales were encouraged and made by defendant to private individual consumers who walked into his store from the street and bought some restaurant, hotel or bar supplies in small quantities for personal or family use. Also some of his business customers purchased small quantities of supplies at retail prices. If the defendant had proved that his establishment is within the re-

3. See the guiding principles set forth in the opinion of Judge Maris in Telephone Answering Service, Inc. v. Goldberg, 290 F.2d 529, 532–534 (1st Cir. 1961); also in Dickenson v. United States, 353 F.2d 389 (9th Cir. 1965), approving a definition of retail sales.

tail concept, clearly those sales would be recognized as retail in the industry.

On the other hand, it is just as clear that sales of supplies at a discount to business customers in quantities larger than a private individual would purchase for personal or family use would not be recognized as retail in the industry. Even quantity sales without discount to business customers which exceed purchases ordinarily made to private individual consumers would not be recognized as retail. Likewise a sale, with or without discount, of a single item of equipment [4] which is larger in size and capacity and ordinarily unsuitable for use in a home or apartment by the individual private consumer, would not be recognized as retail in the industry. Such large commercial items have no private or non-commercial utility.

The great majority of defendant's sales to business customers, in our opinion, are not traditionally recognized as sales *in* the industry as distinguished from recognition as retail sales *by* the industry, exemplified by the personal opinions of defendant and his witnesses. We think defendant's quantity sales and equipment sales to his business customers must be considered wholesale or non-retail. (See plaintiff's Ex. 11, § 779.327, pp. 52–53; testimony of Dr. Cox, T., pp. 294 et seq.)

Moreover, defendant failed to prove, as was his burden, that his sales of supplies and small items of equipment to private individual consumers and small-quantity sales to business customers, which may be recognized as retail sales in the industry, amounted to 75% of his annual dollar volume. On the contrary, the plaintiff's exhibits and testimony are persuasive that they did not. (T., p. 338.)

We cannot accept defendant's argument that all sales except sales for resale (10%) plus bid sales are recognized as retail in the industry. Bid sales are non-retail. (See plaintiff's Ex. 11, § 779.327, p. 53.) [5]

In summary, the employees involved are not exempt from the provisions of the Act because defendant's establishment is not within the retail concept, and even if it were, the defendant failed to meet his burden of proof by showing that 75% of the annual dollar volume of sales of supplies and equipment, respectively, are recognized as retail sales in the industry.

### CONCLUSIONS OF LAW

1. Defendant's employees, Josephine McLoota and Victor Sidola, were engaged in interstate commerce within the meaning of the Act, and, unless exempt, such engagement entitles them to the benefits of the minimum wage and overtime compensation provisions of the Act, while at the same time it placed upon the defendant the obligations imposed by its minimum wage, overtime compensation, and record-keeping provisions. (29 U.S.C.A. §§ 206, 207, 211(c).)

2. Defendant's employees aforementioned were not paid weekly salaries sufficient in amount to be exempt under the executive-administrative exemption. (29 U.S.C.A. § 213(a) (1); 29 C.F.R. §§ 541.1, 541.2; transcript of pretrial conference, p. 4.)

3. Defendant's business is not a retail establishment within the meaning of the Act; it lacks the retail concept. Even if defendant's establishment is within the retail concept, he failed to prove that 75% of the annual dollar volume of his sales were recognized as retail in the industry. There was no evidence showing the precise percentage of his annual

---

4. See finding of fact No. 3. Such items of equipment are suitable only for restaurants, hotels, bars, taverns, etc. There was no convincing evidence that defendant sold large commercial items to private individual consumers.

5. Defendant categorically states in his brief that the total amount of sales for resale and bid sales to Cambria County in the year 1965 is less than 25%. He did not submit percentage calculations for bid sales to Cambria County for the other years involved.

dollar volume of sales recognized as retail in the industry which was attributable to supplies and to equipment, respectively.

4. The burden was upon the defendant to prove that his employees were exempt from the provisions of §§ 206 and 207, 29 U.S.C.A., by the provisions of §§ 213(a) (1) and 213(a) (2), 29 U.S.C.A. Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); Goldberg v. Furman Beauty Supply, Inc., 300 F.2d 16 (3d Cir. 1962). Defendant did not meet his burden of proof.

5. Defendant violated the minimum wage and overtime compensation provisions of the Act by failing to pay his employees, Josephine McLoota and Victor Sidola, wages at rates equal to the minimum rate prescribed by § 206, 29 U.S.C.A., that is, one dollar and fifteen cents ($1.15) per hour from June 3, 1963 to September 3, 1963, and one dollar and twenty-five cents ($1.25) per hour from September 3, 1963 to January 1, 1965, and by failing to compensate these said employees at a rate equal to one and one-half (1½) times their regular rates for hours worked in excess of forty (40) in a workweek as prescribed by § 207, 29 U.S.C.A.

6. Defendant's employees, Josephine McLoota and Victor Sidola, performed work for defendant for which they were not properly paid; therefore, the burden shifted to defendant to show the precise amount of work performed or to negative the reasonableness of the inference to be drawn from plaintiff's evidence. Defendant did not meet his burden of proof.

7. Defendant failed to maintain the proper records as required by the regulations of the Secretary of Labor and published at 29 C.F.R. § 516.

8. Defendant violated the record-keeping provisions of the Act. (29 U.S.C.A. § 211(c).)

9. Prior to this action the defendant was aware of his duties and obligations under the Act, but nevertheless continued to violate its provisions with respect to minimum and overtime payments to his employees and to record keeping.

10. An injunction restraining defendant from violating the provisions of §§ 206, 207, 211(c), 215(a) (2), and 215 (a) (5) of the Act should issue.

The injunction should also restrain the continued unlawful withholding of wage underpayments due the employees. In the event the employees refuse to accept the payment of back wages, such sums shall be paid into the Treasury of the United States.

11. The plaintiff is entitled to interest on the wages owing to Josephine McLoota and Victor Sidola at the rate of 6% from the median point of each employee's period of employment involved until the date of this order, plus costs. Wirtz v. Atlas Metal Spraying Co., Inc., 49 L.C. ¶ 31,551 (E.D.Pa.).